Matthias, J.
 

 The issues in this case are materially narrowed by reason of the fact that the Court of Appeals announced separate findings of fact and conclusions of law.
 

 The complete finding of facts is as follows:
 

 “1. On May 31, 1949, the defendant, Alina B. Singrey, was the owner of adjacent lots Nos. 7 and 8 in Bussells Estate Addition to the city of Mount Vernon, Ohio.
 

 “2. She owned three houses known as 300, 302 and 302% situated on these two lots, the exact location thereon being uncertain as to the boundary between the two lots.
 

 “3. The plaintiffs were and had been month to month tenants of the center house No. 302 for more than ten years, the rent being due on the first of the month.
 

 “4. A. Mrs. Allen lived in the westerly house known as 302%, located wholly on Lot 7, as a monthly tenant paying her rent on the 15th of each month.
 

 “5. On May 31, 1949, plaintiff, George E. Tier, went to the home of Mrs. Singrey and paid the rent for June, 1949. At this time Mrs. Singrey offered to sell to him the two properties, the one where he was living known as 302 and the Allen house known as 302% Curtis street for the sum of $6,000. Later the same day he returned with his wife and accepted the offer, giving her a check for $500 part payment. Mrs. Singrey stated he was now the owner of the property and returned him the rent money he had paid for June, 1949.
 

 “6. The contract was oral.
 

 
 *524
 
 “7. The deal was to be a cash transaction.
 

 “8. If the two houses purchased by the plaintiff stood on more than one lot the land was to be divided among the houses.
 

 “9. Mr. Bermont, defendants’ attorney, was to check the records, find out where the houses lay, get a proper description and make the deed.
 

 “10. Mrs. Singrey told the plaintiff to see Mrs. Allen, the tenant in 302% and make arrangements for her to pay him the rent on June 15th. He did so.
 

 “11. Curtis street runs east and west. Lots Nos. 7 and 8 face on Curtis street, lot 7 being to the west and lot 8 to the east. Lot 7 is 66.7 feet wide on the north end on Curtis street, 132 feet deep and is 58.8 feet wide at the south end. The west north and south line of lot 7 is perpendicular to Curtis street. Lot No. 8 is 66.6 feet wide on Curtis street and 58.8 feet wide at the south end. The east north and south line of lot 8 angles slightly in a northeasterly and southwesterly direction and is not perpendicular to Curtis street.
 

 “12. House No. 300 lies wholly on lot 8. House No. 302% lies wholly on lot 7. House No. 302 lies mostly on lot 7 but a portion of the east side of the house lies on lot 8 due to the angle at which it is built.
 

 “13. No dispute existed between the parties as to the boundary line between houses 302 and 300.
 

 “14..The boundary line between lots 302% and 302 is not relevant to the issue.
 

 “15. Approximately 10 feet of ground separate houses 300 and 302. (This is a mathematical computation from the engineer’s testimony.)
 

 “16. Defendant did not cash the check and later repudiated the contract.
 

 “17. Plaintiff tendered balance of purchase price and continued to live in the house.
 

 “18. If two points are taken, one midway between house 302 and 300 at the north line thereof, and an
 
 *525
 
 other midway between said houses at the south end thereof, and they are connected and then projected in a straight line respectively to the line of Curtis street and the south line of said lots, a proper division is made thereof in- accordance with the intention of the parties under the contract.”
 

 The following are the pertinent parts of the conclusions of law:
 

 “1. The plaintiff went into possession of the property known as 302 and
 
 302y2
 
 "West. Curtis street under the oral contract of purchase by reason of findings of fact Nos. 5 and 10,
 
 supra.
 

 “2.
 
 This constitutes such a change of possession as to render the statute of frauds inoperative. (The word, “imperative,” appears in the statement of the conclusions of law, but in the court’s journal entry it is “inoperative,” which we assume to be correct.)
 

 “3. The contract was not divisible. ■ Consequently, the boundary line between houses Nos. 302y2 and 302 is not material.
 

 “4. There being no dispute as to the boundary line between houses Nos. 302 and 300 and the formula proposed by the defendant having been accepted by plaintiffs, nothing remained to be done but to get a proper description; consequently, the requirements for a decree of specific performance in equity are met.
 

 “5. The contract is not unconscionable.”
 

 The question presented is:
 

 If we assume that the facts as stated in findings Nos. 5 and 10, which do indicate a change in the character of occupancy, constitute an actual delivery of the possession of the property involved to the plaintiffs, as concluded by the Court of Appeals, does that fact, when considered with the further facts clearly disclosed by the record, entitle the plaintiffs to a decree of specific performance?
 

 Section 8621, General Code, provides as follows:
 

 
 *526
 
 “No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in, or concerning them, nor upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.”
 

 Possession alone is not sufficient to remove the sale from the operation of the statute of frauds. That is expressly conceded by counsel for the plaintiffs. Part performance of the contract may constitute a ground for relief from the statute of frauds, of which possession is usually an element.
 

 In an action for specific enforcement of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative only when a failure to enforce the contract will result in fraud and injury. To entitle one claiming to have purchased land to enforce an oral contract for the conveyance thereof, he must, in reliance on the promise, have performed acts which changed his position to his prejudice. 37 Corpus Juris Secundum, 764, 766.
 

 The rule in such cases is well stated in 49 American Jurisprudence, 886, Section 580, as follows:
 

 “In order to escape the effect of the statute upon the theory of fraud, one must establish that he acted in reliance on the contract and on the acts or acquiescence of the other party thereto in such way as to have changed his position or prejudiced himself. The fraud against which the courts grant relief, notwithstanding the statute of frauds, consists in a refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury or made some irretrievable change of position, especially where
 
 *527
 
 the defendant has secured an unconscionable advantage, and not in the mere moral wrong involved in the refusal to perform a contract which by reason of the statute cannot be enforced. When one party induces another, on the faith of a parol contract, to place himself in a worse situation than he could have been if no agreement existed, and especially if the former derives a benefit therefrom at the expense of the latter, and avails himself of his legal advantage, he is guilty of fraud, and uses the statute for a purpose not intended — the injury of another — for his own profit. In such cases, equity regards the case as being removed from the statute of frauds and will in proper cases enforce the contract or otherwise interfere to prevent the application of the statute.”
 

 To the same effect, see
 
 Watson
 
 v.
 
 Erb,
 
 33 Ohio St., 35, 46.
 

 Other operative facts relied upon by the plaintiffs are as follows:
 

 “1. Return of the rent for 302 Curtis street by appellant, Mina B. Singrey, to appellees and the instruction to collect the rent when due on 302%.
 

 ”2. Acceptance of the check for down payment and retention for ten days.
 

 “3. Tender of the balance by the appellees of $5,500 on June 14, 1949.”
 

 Plaintiffs claim further that if they are refused a decree of performance they will be greatly damaged in the loss of their bargain, for defendant claims the properties are much more valuable than the $6,000 agreed on as a sale price, and further that plaintiffs had borrowed the purchase money and have been paying interest thereon since June 1949.
 

 It is to be noted that these additional facts do not of themselves constitute a detriment which cannot be readily compensated. The return of the rent for the premises located at 302 Curtis street to the plaintiffs
 
 *528
 
 by the defendant and the authority to collect rents from the other premises by the plaintiffs accrued to their advantage and particularly this is true since the premises at 302 Curtis street were then and are now occupied by them and the rent at 302% Curtis street was not due until after defendant had refused to carry out the contract.
 

 • The delivery of the check for the down' payment which was returned to plaintiffs without being cashed did hot constitue payment for the premises for it was biit a part, of the purchase price and delivery necessarily was conditioned upon the conveyance of the real estate by deed by the defendant. The alleged tender of the balance of the purchase price was made five days after the defendant had notified the plaintiffs that she would not complete the sale.
 

 The loss of profits by reason of the failure to secure the premises at the bargain price is not of itself a ground for the intervention of a court of equity. Damages only are involved in such a situation. It is suggested by the plaintiffs that numerous improvements had been made on the premises but admittedly all were made during plaintiffs’ tenancy and prior to the claimed contract of purchase of the premises.
 

 The rule particularly applicable here is well stated in 49 American Jurisprudence, 732, Section 427, as follows:
 

 “Since the doctrine of part performance is based upon the prevention of fraud, and its application to permit specific performance of an oral contract is dependent upon the existence of the general prerequisites to equitable relief, nothing can be regarded as a part performance to take a verbal [oral] contract out of the operation of the statute which does not place the party in a situation whereby he will be defrauded unless the contract is executed. The acts relied upon as a part performance of a parol contract for the sale
 
 *529
 
 of land must be such as change the plaintiff’s position and would result in a fraud, injustice, or hardship upon him, if the contract were not executed or enforced. * =S #
 

 ‘ ‘ Equity has no concern in cases of part performance except to prevent the perpetration of a fraud. That is the only ground which can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annulment of the statute would be merely bare usurpation. # * * The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.”
 

 The facts disclosed by the record fall far short of establishing that the plaintiffs have been placed in a situation where they will be in any wise defrauded by a refusal to execute the claimed contract.
 

 The judgment of the Court of Appeals is reversed and final judgment entered for the defendant.
 

 Judgment reversed.
 

 Stewabt, Taft and Hast, JJ., concur.
 

 Middleton, J., not participating.