GLEASON, Appellee,

v.

GLEASON et al., Appellants.

[Cite as *Gleason v. Gleason* (1991), 64 Ohio App.3d 667.]

Court of Appeals of Ohio,
Scioto County.

No. 90 CA 1889.

Decided May 8, 1991.

668

*Wolery, Price & Hoover* and *Mark W. Price,* for appellee.[1]

*Bannon, Howland & Dever, Richard T. Schisler* and *William L. Howland,* for appellants.[2]

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Scioto County Court of Common Pleas following a jury trial granting Walter Gleason, plaintiff below and appellee herein, an undivided one-half interest in a ninety-acre farm located in rural Scioto County and owned by James Gleason, a defendant below and appellant herein, in which Hilda Gleason, a defendant below and appellant herein, had a life estate. Appellants assign the following errors:

### Assignment of Error No. 1

"The trial court erred in allowing the question of awarding specific performance to be considered by the jury."

### Assignment of Error No. 2

"The trial court erred in allowing the equitable remedy of specific performance to be considered when the legal remedy of damages was available."

### Assignment of Error No. 3

"The trial court erred in charging on and allowing the doctrine of part performance to be considered by the jury."

---

1. Appellee was represented by different counsel at trial.

2. Appellants were represented by different counsel at trial.

### Assignment of Error No. 4

"The trial court erred in allowing testimony concerning statements made by decedent Murray Gleason."

### Assignment of Error No. 5

"The trial court erred in allowing the issue of the applicability of the statute of frauds to go to the jury."

### Assignment of Error No. 6

"The trial court erred in allowing counsel for plaintiff to improperly question and harass witnesses."

### Assignment of Error No. 7

"The trial court erred in not granting the motion of defendants for a directed verdict on the question of specific performance."

The following facts are pertinent to this appeal. On October 7, 1988, appellee filed a complaint in the Scioto County Court of Common Pleas. In the complaint, he averred that in the fall of 1979, appellee's parents, Murray Gleason, deceased, and appellant Hilda Gleason, orally promised they would transfer a one-half interest in the ninety-acre family farm if appellee would maintain and pay expenses relating to the farm. Appellee claimed that he agreed to terms of the agreement. Murray Gleason died in 1981 and, following probate of his estate, appellant Hilda Gleason became the sole owner of the property on January 29, 1982. Appellee further averred that Hilda reassured him at that time that the agreement to transfer to him a one-half interest in the farm was still in effect. Appellee claims from 1979 through 1986 he fulfilled his duties pursuant to the agreement and expended approximately $27,250 for the maintenance and care of the farm.

Appellee averred that on or about September 9, 1988, appellant Hilda Gleason transferred the farm to appellant James Gleason, one of appellee's brothers. Appellee claimed that he was reassured that he would still receive his one-half interest in the farm; however, on September 7, 1988, James Gleason, through his attorney, sent appellee a letter ordering him to vacate the farm. Appellee prayed for reimbursement of his expenditures or specific performance of the promise. Appellee's complaint contained a jury demand.

On November 22, 1988, appellants answered and denied that any agreement existed. They further filed a counterclaim seeking reasonable value for appellee's use of the land after October 8, 1988. Appellants also demanded a jury trial on all issues.

A four-day jury trial commenced on February 22, 1988. The majority of the testimony presented involved whether an agreement existed and the amount of money and time appellee expended in working the farm. After both parties rested, the jury returned a verdict in favor of appellee awarding him a one-half interest in the farm. The court below entered judgment upon the verdict on April 5, 1989.[3] Appellants filed a motion for a new trial which was overruled on May 30, 1989.[4]

In their first assignment of error, appellants argue that the court below erred in allowing the jury to consider the issue of specific performance. Appellants assert that specific performance is an equitable remedy and, as such, should have been considered only by the court and not the jury. Assuming, *arguendo*, that generally, in situations with facts similar to those in the case at bar, that the court should decide whether specific performance is a proper remedy, appellants are estopped from asserting that the lower court erred under the specific facts of this case.

■ Generally, a party is not entitled to a jury when he seeks specific performance. See, *e.g.*, *Pierce v. Stewart* (1899), 61 Ohio St. 422, 56 N.E.2d 201, paragraph one of the syllabus. However, R.C. 2311.04 states that all issues not specifically set forth therein are to be tried by the court "subject to its power to order any issue to be tried by a jury * * *." Further Civ.R. 39(C) states that "the court, with the consent of both parties, may order a trial of any issue with a jury * * *." Therefore, since both parties sought a jury trial, and the court set a jury trial, and there is no other reason why a jury could not decide an equitable issue, the jury in the case *sub judice* properly heard the case pursuant to Civ.R. 39(C).

■ Further, even if Civ.R. 39(C) was inapplicable, we still would not reverse. As noted, *supra*, R.C. 2311.04 allows the court to order any issue to be tried by jury. That power is not absolute, however. If a party objects to the jury trial and the court orders a jury trial over the objection, there is reversible error if the objecting party is prejudiced by the jury trial. See *Pokorny v. Local 310* (1973), 38 Ohio St.2d 177, 67 O.O.2d 195, 311 N.E.2d

---

3. Following the jury trial but prior to the judgment being entered, the judge presiding over the case below died. Pursuant to Civ.R. 63(B), another judge entered judgment upon the jury verdict.

4. Appellants filed a notice of appeal on June 8, 1989. On March 6, 1990, this court dismissed the appeal because there had been no final appealable order. Although all of appellee's claims had been disposed of, appellants' counterclaim had not been ruled upon. Following dismissal by this court, the court below, by *nunc pro tunc* entry, dismissed appellants' counterclaim on April 3, 1990. Appellant filed a new notice of appeal and the cause herein is now properly before this court.

866. In the case at bar, there was no objection to the jury trial; in fact, appellants demanded a jury trial. Therefore, no reversible error occurred. Finally, we note that even if a jury trial was clearly improper, we must overrule appellants' first assignment of error. We will not permit appellants to take advantage of the error they invited by demanding a jury trial on all issues. See *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 31 OBR 587, 590, 511 N.E.2d 106, 109; *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus. For the aforementioned reasons, appellants' first assignment of error is overruled.

Because both appellants' second and seventh assignments of error involve the issue of whether there was sufficient evidence presented to allow an instruction on specific performance, we will consider them jointly. In their second assignment of error, appellants contend that specific performance was improperly considered because appellee had an adequate remedy at law. In their seventh assignment of error, appellants contend that the trial court erred in failing to grant their motion for a directed verdict on the issue of specific performance.

Specific performance is only available where there is no adequate remedy at law. In the case *sub judice,* appellee presented absolutely no evidence on the issue of why there was no legal remedy—*e.g.,* damages—which could adequately compensate him. Generally, in the absence of such evidence a court must assume that a legal remedy exists and refuse to grant specific performance.

There is an exception to that affirmative duty to prove that no legal remedy is adequate. "[W]here land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the particular case." 71 American Jurisprudence 2d (1973) 144, Specific Performance, Section 112. " 'Contracts involving interests in land * * * generally are specifically enforced because of the clear inadequacy of damages at law for breach of contract.' " 11 Williston on Contracts (3 Ed.1968) 673, Section 1418–A (citing *City Stores Co. v. Ammerman* [ (DDC 1967) ], 266 F.Supp. 766, 776). See, also, *Ayres v. Cook* (1942), 140 Ohio St. 281, 288, 23 O.O. 491, 494, 43 N.E.2d 287, 291 ("an action at law does not ordinarily afford an adequate remedy for refusal to convey real estate in accordance with a valid agreement"); *Link v. Burke* (App.1926), 5 Ohio Law Abs. 676, 677 ("specific performance may be had as a matter of right, because there is nothing else in the world exactly equivalent to conveyance of the particular piece of real estate contracted for").

■ Hence, appellee's failure to present evidence which proved that legal remedies were inadequate did not prevent the jury from considering whether specific performance was an appropriate remedy. Appellants contend that since in this particular case appellee sought monetary damages in his prayer for relief, appellee showed that there was an adequate legal remedy, and, therefore, the jury should not have considered the issue. We disagree.

Appellee prayed for damages as an alternative for specific performance. The measure of damages was merely the value of expenditures appellee had claimed to make with respect to the property from 1979–1986. Those damages would not compensate him for the value of the one-half interest in the property. Thus, the court properly allowed the jury to consider the issue of specific performance and further properly overruled appellants' motion for a directed verdict on that issue. For the aforementioned reasons, appellants' second and seventh assignments of error are overruled.

We will next consider appellants' third and fifth assignments of error. In their third assignment of error, appellants contend that the court below erred in allowing the jury to consider the issue of part performance. In their fifth assignment of error, appellants assert that the lower court erred in allowing the jury to consider the issue of the applicability of the statute of frauds. Basically appellants assert that the evidence presented was insufficient on the issue of part performance to allow the jury to consider that issue. Therefore, appellants' argue, the statute of frauds should have prevented appellee from seeking enforcement of the agreement.

The statute of frauds is codified in Ohio in R.C. Chapter 1335. In particular, R.C. 1335.05 reads, in pertinent part as follows:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or *upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them,* or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." (Emphasis added.)

Basically, in part, the statute requires that any agreement involving the transfer of an interest in land must be in writing. In the case at bar, there was no writing which contained the alleged agreement between appellee and his parents wherein appellee's parents promised to convey a one-half interest

in the property if appellee took care of the property. Under ordinary circumstances, appellee would be barred from asserting the existence of such an agreement. However, there is an exception which would take the agreement out of the statute of frauds, to wit: the doctrine of part performance.

■ Part performance is a doctrine in equity to prevent an injustice to the party seeking enforcement of the contract. The leading case in Ohio on the issue of part performance is *Delfino v. Paul Davis Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194, where the following is stated at 286–289, 31 O.O.2d at 560–562, 209 N.E.2d at 198–199:

"The doctrine of part performance is based in equity. It is applied in situations where it would be inequitable to permit the statute to operate and where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements.

"Part performance to be sufficient to remove the agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code) must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo*. *Hughes v. Oberholtzer*, 162 Ohio St. 330 [55 O.O. 199, 123 N.E.2d 393]; *Tier v. Singrey*, 154 Ohio St. 521 [43 O.O. 492, 97 N.E.2d 20]; *Myers v. Croswell*, 45 Ohio St. 543, 548 [15 N.E. 866, 869]; 37 Corpus Juris Secundum 759, Statute of Frauds, Section 250. If the performance can reasonably be accounted for in any other manner or if plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute.

"In *Tier v. Singrey, supra*, [154 Ohio St.] at 526 [43 O.O. at 495, 97 N.E.2d at 23], it is stated: 'Possession alone is not sufficient to remove the sale from the operation of the statute of frauds. That is expressly conceded by counsel for the plaintiffs. Part performance of the contract may constitute a ground for relief from the statute of frauds, of which possession is usually an element.

" 'In an action for specific enforcement of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative only when a failure to enforce the contract will result in fraud and injury. To entitle one claiming to have purchased land to enforce an oral contract for the conveyance thereof, he must, in reliance on the promise, have performed acts which changed his position to his prejudice. 37 Corpus Juris Secundum 764, 766, Section 252.

" 'The rule in such cases is well stated in 49 American Jurisprudence 886, 887, Section 580, as follows:

" ' ' "In order to escape the effect of the statute upon the theory of fraud, one must establish that he acted in reliance on the contract and on the acts or acquiescence of the other party thereto in such way as to have changed his position or prejudiced himself. The fraud against which the courts grant relief, notwithstanding the statute of frauds, consists in a refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury or made some irretrievable change of position, especially where the defendant has secured an unconscionable advantage, and not in the mere moral wrong involved in the refusal to perform a contract which by reason of the statute cannot be enforced. When one party induces another, on the faith of a parol contract, to place himself, in a worse situation than he could have been if no agreement existed, and especially if the former derives a benefit therefrom at the expense of the latter, and avails himself of his legal advantage, he is guilty of fraud, and uses the statute for a purpose not intended—the injury of another—for his own profit. In such cases, equity regards the case as being removed from the statute of frauds and will in proper cases enforce the contract or otherwise interfere to prevent the application of the statute." '

"The rule particularly applicable here is well stated in 49 American Jurisprudence 732, Section 427, as follows:

" 'Since the doctrine of part performance is based upon the prevention of fraud, and its application to permit specific performance of an oral contract is dependent upon the existence of the general prerequisites to equitable relief, nothing can be regarded as a part performance to take a verbal [oral] contract out of the operation of the statute which does not place the party in a situation whereby he will be defrauded unless the contract is executed. The acts relied upon as part performance of a parol contract for the sale of land must be such as change the plaintiff's position and would result in a fraud, injustice, or hardship upon him, if the contract were not executed or enforced.
* * *

" 'Equity has no concern in cases of part performance except to prevent the perpetration of a fraud. That is the only ground which can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annulment of the statute would be merely bare usurpation. * * * The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded,

either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.'" See, also, *Clagg v. Cooke* (Aug. 8, 1989), Pickaway App. No. 88CA23, unreported, 1989 WL 98482.

We first note that part performance may only be applied where money damages would be insufficient. For the reasons set forth in our discussion concerning appellants' second and seventh assignments of error, that requirement is satisfied. The majority of appellants' argument concerning part performance is that there was not sufficient performance shown to take the agreement out of the statute of frauds. In essence, appellee was required to show that he partially performed in reliance and to his detriment upon the promise that if he so performed, he would receive a one-half interest in the farm and that the only remedy which would prevent him from being defrauded would be enforcement of the agreement. Incumbent in appellee's burden was to show that he would not have performed in the absence of the agreement.

■ At trial, appellee presented evidence that from 1979–1986 he paid the taxes and insurance on the farm, he grew tobacco all but two years, and made improvements on the farm which included liming the fields, clearing the fields and building fences. He also built a house on the farm. However, it should be noted that the piece of property upon which he built the house was part of a two and one-half acre tract of land which had already been deeded to him.

From this evidence, the jury could have concluded that his performance was induced from the promise to convey to him a one-half interest in the land. Even the act of building the house on the farm could be so interpreted. If he had not been promised the interest in the farm, he may have decided to locate elsewhere. Some of the actions, such as building the fences and liming the fields could be considered to be for appellee's own benefit because he was raising show cattle; however, again without the promise to be given the interest in the farm, appellee may not have decided to raise cattle. From the above, it is clear that there was sufficient evidence presented from which the trial court could instruct the jury and allow the jury to consider the issue of whether the doctrine of part performance applied to take the agreement out of the statute of frauds. Accordingly, appellants' third and fifth assignments of error are overruled.

■ In their fourth assignment of error, appellants assert that the court below erred in allowing testimony concerning statements made by decedent Murray Gleason, appellee's father. Appellee was able to elicit testimony at trial which allegedly showed Murray Gleason's intention to convey the one-

half interest in the farm to appellee. Appellants' argue that such statements were hearsay and were not within the exception concerning statements by decedents set forth in Evid.R. 804(B)(5).

Without ruling on whether the statements were improperly admitted, we hold, even assuming, *arguendo*, that that statement should not have been admitted, that any error was harmless. During its charge to the jury, the court included the following instruction:

"I'm going to instruct you right now that he [appellee] has no claim against the Estate of his father Murray Gleason, who's deceased. Because if he did have such a claim he should have presented it in the Probate Court in 1981. It's too late for that now. So what you're to consider at this time is whether or not Mr. Gleason had an agreement with his mother Hilda Gleason."

Accordingly, whether or not Murray Gleason ever promised to convey to appellee a one-half interest in the farm was irrelevant. Hence, the statements allegedly made by Murray Gleason would have had no bearing on the outcome of the case *sub judice*. Since the outcome of the trial would not have been changed if the statements involving promises allegedly made by Murray Gleason had not been admitted, any error was harmless and we overrule appellants' fourth assignment of error. See *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490.

In their sixth assignment of error, appellants assert that the court erred in allowing appellee's trial counsel to improperly question and harass witnesses. Appellants cite to seven portions of the transcript where, during cross-examination, appellee's trial counsel asked what appellants believe to be improper questions and argue that by allowing such questioning, the court committed reversible error. After reviewing the record, we find appellants' argument to be without merit.

A trial court may in its discretion grant a party latitude during cross-examination. Before a court of appeals may reverse a trial court on a discretionary matter, it must be determined that the lower court abused its discretion. An abuse of discretion connotes more than error of law or judgment. There must instead be a finding of an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205. While some of the questions may have been improper—*e.g.*, asking a witness if he ever beat up his wife or blackened her eyes—we do not believe, when reviewing the

transcript as a whole, that there was an abuse of discretion.[5]

Further, even if there was an abuse of discretion, we perceive no prejudice to appellant. Most of the questions were not specifically objected to, and, therefore, we could not reverse unless there was plain error.[6] Clearly, no plain error existed in the case at bar. With respect to the questions where there were objections which were overruled, we find any error harmless. Appellants assert no specific prejudice as a result of the questions, and we are unable to determine that any prejudice arose as a result of a few isolated questions during the course of a four-day trial. Accordingly, appellants' sixth assignment of error is overruled, and the judgment of the court below is affirmed.

*Judgment affirmed.*

HARSHA and STAPLETON, JJ., concur.

WILLIAM B. STAPLETON, J., of the Brown County Court of Common Pleas, sitting by assignment.

---

**5.** *Ordinarily, asking questions about a witness's propensity toward violence is improper* because the responses sought are not relevant to the issues in the case where the only issues concern the existence of a contract and the value of services rendered and they are not questions impugning the credibility of the testifying witness, which are allowable pursuant to Evid.R. 608(B). However, in the case at bar, both parties brought into issue the propensity toward violence of the various parties and witnesses. Although whether or not a party or witness was violent was not relevant to the issue of whether or not an agreement existed, counsel for both parties attempted to make it an issue. It would have been difficult for the trial court to cut off this line of questioning on cross-examination when counsel for *both parties asked questions of a similar nature during direct examination.*

**6.** We note that plain error is ordinarily not recognized in civil cases. However, in order to prevent a manifest miscarriage of justice, the plain error rule may be applied in civil cases. See Evid.R. 103(D); *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223, 18 OBR 281, 283, 480 N.E.2d 802, 805; *Schade v. Carnegie Body Co.* (1980), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 319, 436 N.E.2d 1001, 1005.