STOOPS, Appellee,

v.

MILLER et al., Appellants.

[Cite as *Stoops v. Miller* (1994), 97 Ohio App.3d 265.]

Court of Appeals of Ohio,
Geauga County.

No. 93–G–1823.

Decided Sept. 26, 1994.

---

*James M. Gillette,* for appellee.

*James W. Reardon,* for appellants.

Ford, Presiding Judge.

This accelerated calendar case has been submitted on the briefs of the parties.

This cause is before us on the notice of appeal of appellants, Carol and Laverne Miller. On November 6, 1992, appellee, Kenneth Stoops, filed a complaint seeking specific performance of an oral contract to sell land. On December 8, 1992, appellants filed an amended answer and counterclaim. The counterclaim was voluntarily dismissed in open court during the trial of this matter. In their amended answer, appellants asserted the affirmative defense of Statute of

Frauds. Appellants filed a motion for summary judgment on July 14, 1993, which the trial court denied on August 16, 1993.

The case was tried to the bench on October 6, 1993. Judgment was rendered against appellants on October 6, 1993, and they were ordered to deliver to appellee a warranty deed for the subject premises. Appellants have timely appealed and assert the following assignments of error:

"1. Plaintiff-appellee did not prove an oral contract to sell land by clear and convincing evidence.

"2. The trial court committed prejudicial error by invoking the part performance doctrine to remove the alleged oral agreement from application of the Statute of Frauds."

Under their first assignment, appellants argue that appellee did not demonstrate the existence of an oral contract. Also, they maintain that even if such contract existed, appellee failed to carry his burden as to the doctrine of part performance, which would remove the alleged oral agreement from the application of the Statute of Frauds. Thus, we must first determine whether an agreement existed.

It is well settled that:

"Evidence of the exact words of offer and acceptance in proof of an oral contract is not essential. It is sufficient if the words, deeds, acts, and silence of the parties disclose the intent to contract and the terms of the agreement." *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph one of the syllabus; see, also, *Hamilton v. Howard* (Dec. 9, 1983), Ashtabula App. No. 1124, unreported, at 5, 1983 WL 6001.

The subject property consists of two parcels located on Shedd Road in Middlefield Township, Geauga County, Ohio, and has a combined acreage of 1.37 acres. Appellee's father, Kenneth Stoops, Sr., owned the property for several years and sold it to appellee's brother and sister-in-law, James and Deborah Stoops ("the Stoopses"). The Stoopses owned the property for approximately five years, but upon deciding to sell it, refused to sell it to appellee. During his family's ownership of the property, appellee had been using an old barn on the property for repairing cars that belonged to family and friends. Appellee is not employed but is receiving SSI disability benefits for an anxiety/panic disorder.

Appellee became acquainted with appellants approximately six months before the property was listed for sale. He had been dating and living with their daughter, Gwendolyn. When appellants learned that appellee wished to buy the property from his brother, James Stoops, they offered their help.

Appellee contends that since he could not secure financing, appellants offered to borrow the money and allow appellee to pay them back on a monthly basis toward the purchase price of the property. Appellee also submits that a discussion to this effect took place in September 1989 at the home of his ex-wife, Dorcus Stoops. Appellants either deny or cannot recall that such a discussion took place.

Appellants ultimately entered into a purchase agreement with appellee's brother for $5,600. Appellants then borrowed $5,000 from Lubrizol Credit Union on October 13, 1989. Subsequently, appellee wrote three checks totaling $800 to appellants toward the balance of the purchase price and escrow and closing costs. Title transfer occurred between the Stoopses and appellants on November 6, 1989. Thereafter, appellants made monthly payments on their loan in the amount of nearly $177. Appellee also continued in possession of the property and worked on vehicles there for friends and family members. In so doing, he brought a mobile home to the property for storage of furniture and equipment for his repair work and made several improvements upon the land. He planned to move into it himself once the property was completely paid for and to live there with appellants' daughter.

Appellee paid appellants the sum of $200 per month from December 1989 through September 1992, when he believed he had paid the loan in full and was evicted from the premises by appellants. The difference between appellants' loan payment and appellee's monthly payments supposedly represented appellants' cost of obtaining liability insurance for the property. Appellants were fearful of someone getting hurt while present during appellee's car repair work.

According to appellants, their relationship with appellee was moving along smoothly until appellee requested that they execute and convey to him a quit-claim deed to the property. At that point, appellants contacted several attorneys, and refused to execute a deed in favor of appellee. Based on this incident, appellants stopped talking to appellee. Appellants forwarded an eviction notice to appellee in September 1992. Appellants, therefore, deny the existence of an agreement to sell the property to appellee.

Upon direct examination by his counsel, Mr. Miller denied that he and his wife had agreed to sell the subject property to appellee. However, upon cross-examination by appellee's counsel, Mr. Miller admitted that appellee's monthly payments were to apply towards the purchase of the property if and until the payments totaled the purchase price. Mr. Miller also adopted his deposition statements that the payments were to be applied toward the purchase of the property. Mr. Miller further testified that he had bought the land as an investment so that his daughter and appellee could one day *buy* the property and have a place to live. Further, the documentary evidence, *i.e.,* the purchase

agreement and deed conveyed from James and Deborah Stoops to appellants, is sufficient to infer that $5,600 was the agreed purchase price. The foregoing facts, together with the following, sufficiently demonstrate that the parties intended to contract for the sale of the property: appellee made a down payment, paid closing and escrow costs, made the property tax payments, wrote "land contract" on his checks without objection from appellants for numerous months prior to the parties' misunderstanding, and made improvements on the property without objection by appellants.

■ We turn now to the question of part performance under appellants' second assignment of error:

"Part performance to be sufficient to remove an agreement from the operation of the statute of conveyances * * * must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo.*" (Emphasis *sic.*) *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194, paragraph four of the syllabus.

"In an action for specific enforcement of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative only when a failure to enforce the contract will result in fraud and injury. To entitle one claiming to have purchased land to enforce an oral contract for the conveyance thereof, he must, in reliance on the promise, have performed acts which changed his position to his prejudice. * * * " *Tier v. Singrey* (1951), 154 Ohio St. 521, 526, 43 O.O. 492, 495, 97 N.E.2d 20, 23.

■ The standard of proof required to overcome the Statute of Frauds and secure equitable relief is clear and convincing evidence. *Rolland v. Biro* (Nov. 18, 1982), Cuyahoga App. No. 44632, unreported, at 11, 1982 WL 2547.

The *Tier* court noted that possession of the premises, payment for the premises, lost profits, and improvements are all facts which would be considered supportive of partial performance. *Id.,* 154 Ohio St. at 528, 43 O.O. at 496, 97 N.E.2d at 24. In *Tier,* the plaintiff made a down payment which was retained for ten days then returned without being cashed. Also, the plaintiffs in *Tier* tendered the balance to the defendants five days later, but this was also rejected. Further, the plaintiffs borrowed the purchase money, were paying the sum back with interest, and had made some improvements to the premises, although admittedly prior to the claimed contract. The court held that these facts were not sufficient to remove the oral agreement from the Statute of Frauds, and hence, did not result in an enforceable contract. *Id.* at 529, 43 O.O. at 496, 97 N.E.2d at 24.

On the other hand, in *Biro,* the purchaser paid the alleged purchase price in full, took possession, and made improvements. The court held that this was competent, credible evidence to support the trial court's finding of part performance. *Id.* at 12–13. In *Lutz v. Carter* (Oct. 3, 1990), Clark App. No. 2660, unreported, 1990 WL 147355, the court of appeals reversed the decision of the trial court and held that the facts were sufficient to establish a finding of partial performance because plaintiff had entered into possession of the premises, paid rent, made improvements, and paid the full sales price. *Id.* at 20. In *Woodford v. Harrell* (1992), 78 Ohio App.3d 216, 604 N.E.2d 226, the Tenth District Court of Appeals rejected the purchaser's request for specific performance of an oral real estate contract because she never made or tendered a down payment, never paid real estate taxes, did not attend the closing, and was not listed as record owner. *Id.* at 220, 604 N.E.2d at 229.

In the instant case, appellee not only tendered and made a down payment, closing and escrow costs, and real estate taxes, but paid approximately $800 over and above the full amount of the loan. All of these payments were accepted by appellants, a fact which distinguished this case from *Tier,* the case upon which appellants heavily rely. Appellee had also made improvements on the land, and indicated that he never would have bought a mobile home if he had not had a place to put it, a fact which further indicates that he changed his position to his prejudice.

Thus, in light of the foregoing facts and authority, we conclude that appellee has put forth competent, credible evidence which shows by clear and convincing evidence that appellee significantly and fully performed the oral contract, and that he relied to his detriment on appellants' promise to convey the property. The trial court did not err in determining that the principles of equity and justice required specific performance of the contract. Appellants' second assignment of error is without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY and JOSEPH E. MAHONEY, JJ., concur.