OPINION
This is an appeal from the Ashtabula County Court of Common Pleas in which appellant, Ralph L. Janson, challenges the trial court's judgment entry overruling his motion for a new trial under Civ.R. 59(A).
A complaint was filed in the lower court by appellees, William Gurich and Marsha Gurich, on December 15, 1995. Marsha Gurich is the daughter of appellant. In their amended complaint against appellant, appellees sought enforcement of an oral agreement for the sale of a one hundred twenty-acre farm located at 796 Mechanicsville Road ("the farm") in the township of Austinburg, Ashtabula County, Ohio. The matter was tried to the trial judge on June 16 and 17, 1998. On October 27, 1998, the trial judge issued his "Entry of Opinion" and a separate judgment entry concerning the case.
In the "Entry of Opinion," the trial judge made numerous findings of fact. The trial court determined that members of appellant's family were expected to contribute labor and other services in furtherance of the interest of the family businesses titled in the name of appellant. Marsha Gurich testified that she performed services for appellant's businesses for over twenty years, working sixty to eighty hours per week for which she and her husband, William Gurich, were only paid one summer "when we worked the Perry Nuclear Power job." William Gurich also provided substantial services for appellant's businesses once again apparently for no pay except for the Perry Nuclear Power job.
The trial court further found that on October 23, 1973, appellant purchased the farm, which consisted of a farm house, some other building in a state of poor repair, and approximately one hundred twenty acres of land. Appellant paid $59,000 for the farm and took a mortgage loan for its purchase, in the amount of $40,000. From 1973 until about 1979, appellant's son, Jeff Janson ("Jeff"), resided on the property and attempted to open a dairy farm. Jeff testified that his agreement with appellant was to pay appellant $462 per month, and that these payments were made on appellant's mortgage by Jeff at the bank.
Both Marsha Gurich and Jeff believed that if they provided services for the benefit of appellant's businesses, that all of appellant's farm property someday would be transferred to them. However, the trial court specifically found that there was no specific promise as to when the property would be given to them.
In 1979, Jeff left the farm and did not assert any ownership interest in the property. Upon learning that her brother was leaving the property, Marsha Gurich sought to move to the farm and take over the duties once performed by Jeff. Appellees moved their cows to the farm in February 1979. Appellees then moved on the farm and began making monthly payments in the amount of $462 that were due on the mortgage. At that time, the farm buildings were in a state of disrepair and the farm was classified as a Class B operation. Having a Class B classification meant that milk from the cows only could be sold for the manufacture of cheese.
Between 1979 and early 1981, appellees made improvements to the farm and the buildings and were able to get a Class A milk classification because of those efforts. The upgraded classification meant that their milk could be sold for consumption, which would be more profitable than selling it to be used for making cheese.
Appellees continued operating the farm from 1981 until May 1985. During that time, they made monthly payments on the mortgage at the lending institution's office in the amount of $462. The trial court determined that there was no written agreement between the parties serving to define their status.
On April 2, 1985, a fire destroyed the home located on the farm during a period of time in which appellees were residing in it. At the time of the fire, appellant maintained a $25,000 insurance policy on the residential building, and appellees possessed a $15,000 policy on the contents of the residence. After the fire, appellant indicated to appellees that they could rebuild the home in any manner they desired. Yet, no specific promise was made concerning when it would be their home. Appellant contributed $24,900 of his insurance policy proceeds to appellees for the rebuilding of the home. Appellees contributed $20,799 of their own money for the rebuilding of the residence. Appellant knew of appellees' contribution to the home, but did not offer to pay for the full cost of construction of the new residence. The trial court also concluded that appellant told appellees they could build whatever type of home they wanted because there was a mutual understanding that the home eventually would be given to them.
Appellees made improvements to the barn and other buildings located on the farm while living on the property. However, appellant also contributed substantial time and labor to improving the property. Appellant erected a silo, provided the cement necessary to fix the barn, tiled a road ditch, drilled a well, and supplied rafters for the repair and construction of the barn.
On May 23, 1985, appellant desired to purchase another piece of property in Bristolville, Ohio ("the Bristolville property"), and took steps to refinance the mortgage note secured by the farm. Appellant borrowed $65,000. One half of that amount was used to pay off the first mortgage on the farm, while the remainder was used to finance the purchase of the Bristolville property. At the time the note and mortgage were signed for the new $65,000 loan to appellant, appellees were required by the lender to sign a promissory note obligating them to make a monthly payment on the mortgage. The lender stated that the obligation was necessary because appellees' payments were received on a regular basis, while appellant had some past difficulties in making timely payments.
At trial, appellees testified that prior to signing the note, appellant promised that if they would sign the promissory note, appellant would sign a deed and transfer the property to them when the mortgage balance was fully paid. Based on the evidence, the trial court determined that due to that promise, appellees cosigned on the promissory note and obligated themselves to pay the sum of $65,000 to the lender if appellant did not. The lower court also decided that after appellant came to live with them in 1986 due to illness, he again promised appellees that the he would sign off on the deed when the mortgage was paid in full.
The trial court further found that the evidence revealed that during the entire time that appellees were making monthly payments on the farm, from 1979 through March 1994, appellees reported the $462 payment on their income tax return as rental payments. During the same period of time, appellant did not report the $462 payment on his federal income tax return as rental income. On his tax return, appellant took the interest depreciation accrued on the mortgage loan as an expense. Appellant also paid the insurance on the property and real estate taxes.
On March 25, 1994, the final mortgage payment was made on the Ashtabula farm that secured the mortgage, which was then released. From May 23, 1985, until March 25, 1994, appellees had paid nearly $45,000 on the mortgage, while appellant had paid approximately $49,000. Since April 1994, appellees have not made any payments to appellant and appellant has not made any efforts to collect payments from appellees until the filing of this matter on December 15, 1995. Thus, the trial court concluded that if the monthly payments of $462 were rental payments, appellant would have demanded that such payments continue after the mortgage was paid in full.
Based on all the evidence and drawing conclusions on the credibility of the witnesses, the lower court determined that appellant made a specific oral promise to transfer the farm to appellees when the mortgage was fully paid. The specific promise was made when appellant induced appellees to sign the promissory note for $65,000. The court further found that appellant made an oral promise to sell the property to appellees and that appellees fully performed all that was required of them to acquire the property. Accordingly, the trial court stated that there was sufficient evidence to establish full as well as part performance of appellees that removed the oral agreement for the sale of the farm from the operation of the statute of frauds. Thus, appellees were entitled to specific performance of the contract. Therefore, the trial court quieted title of the farm in favor of appellees in a judgment entry dated October 27, 1998.
Appellant subsequently filed a Civ.R. 59 motion for a new trial, which was heard on January 4, 1999. In a judgment entry filed on January 14, 1999, the trial judge overruled appellant's motion on the basis that the judgment was supported by the weight of the evidence. Appellant now timely appeals the trial court's entry overruling his motion for a new trial, and raises the following assignments of error:
 "[1.] The trial court erred to the substantial prejudice of appellant when it found there to be an oral contract although the evidence in support of the oral contract was indefinite, ambiguous, inconsistent and incomplete.
 "[2.] The trial court erred to the substantial prejudice of appellant when it did not bar the oral contract in question as violative of the statute of frauds."
In the first assignment of error, appellant is averring the weight of the evidence was such that the trial court could not conclude that an oral contract was made for the sale of the farm to appellees by appellant. Specifically, appellant states that the evidence does not support such a finding because appellees tax returns treated all payments made by them as rent; appellant paid all real estate taxes and maintained property insurance on the farm; appellees did not object to having the lender characterize the payments on the $65,000 note as rent; appellant was involved in the farm in a manner inconsistent with the alleged sale because he provided labor services and materials for certain projects; there was no definite date that appellant would sign the farm over to appellees; appellees could not give dates concerning when the oral contract occurred; and the alleged words of the contract do not describe the land to be sold.
The standard to be applied in addressing an argument based on manifest weight was set forth in State ex rel. Pizza v. Strope (1990),54 Ohio St.3d 41, quoting Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77:
 "`While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.
 "`The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279 * * * :
 "`"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."'" (Parallel citations omitted.)
 Additionally, with respect to a bilateral contract, it is important for the resolution of this assignment of error to note that "to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. In the context of a unilateral contract, only performance of the condition prescribed will constitute an acceptance. Bretz v. Union Cent. Life Ins. Co. (1938), 134 Ohio St. 171, 175. Only after completion of the performance does the obligation by the other to deliver on his offer become enforceable. Id. Importantly, a valid contract must "be specific as to its essential terms, such as identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." Alligood v. Proctor Gamble Co. (1991), 72 Ohio App.3d 309, 311.
However, if the court can determine that the parties intended to be bound, it may fashion those less essential terms that were omitted in order to reach a fair and just result. Litsinger Sign Co., Inc. v.American Sign Co., Inc. (1967), 11 Ohio St.2d 1, 14. Yet, the Ohio Supreme Court has held:
 "It is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, `making a contract for the parties,' no enforceable obligation results." Id.
In the instant matter, the facts indicate that the trial court's decision that an oral contract existed for the transfer of the farm to appellees was not against the manifest weight of the evidence.
Specifically, this court concludes that adequate evidence was presented to establish the essential terms of a contract. First, appellant and appellees were identified as the parties to the oral agreement. Second, appellees agreed to cosign the loan for appellant and to make payments on the second mortgage until the debt had been liquidated. Third, in return, appellant promised to give the deed to the farm to appellees.
As to the issue of consideration, we further conclude that the compensation given by appellees was legally sufficient to support the agreement. As a result of making the monthly payments from May 1985 to March 1994, appellees paid a total of $45,000 on a piece of property which appellant had originally bought for $59,000. In addition, appellees expressly agreed to become jointly and severally liable for a total debt of $65,000. Although a specific dollar figure cannot be placed upon the value of cosigning for the loan, the fact that appellees were willing to expose themselves to this liability had significant value to appellant.
At trial, evidence was presented which indicated that the value of the farm had risen considerably since appellant had bought the property in 1973. However, there was no evidence presented as to when the property had appreciated; i.e., the rise in value might not have occurred until after the oral agreement was reached in 1985. Moreover, it is well settled that the adequacy of consideration cannot form the basis of invalidating a contract unless fraud or unfair treatment is involved. See Ford v. Tandy Transp., Inc. (1993), 86 Ohio App.3d 364, 384. Thus, after the trial court had found that appellees had given some consideration for the farm, there was no need to review the matter further.
As an aside, this court would note that the trial court improperly designated other factors as consideration which supported the oral agreement. For example, the trial court stated that the uncompensated work appellees had done for appellant was part of the consideration for the transfer of the property. Technically, the trial court erred in relying upon this factor because appellees themselves never testified that they thought that their prior work in the other businesses were part of the consideration for the property. At best, the evidence concerning the prior work should have only been viewed as providing the background for the reason why the oral agreement was made in 1985.
Nevertheless, although the trial court may have cited to improper factors, it still held that the basic agreement between the parties consisted of the promise to transfer the property in exchange for the cosigning of the mortgage and the monthly payments. Furthermore, the record before us contains some evidence supporting this finding. Under the manifest weight standard, the credibility of the witnesses is a matter to be decided by the trier-of-fact, which is the trial judge in this case. Clearly the trial judge decided, after hearing the testimony, that appellant made such an offer and that appellees accepted and performed on their side. There is nothing to show that such a conclusion was improper. Thus, we hold that the trial judge did not commit error in making such a determination.
The fact that appellees treated the farm payments on their taxes as rent does not contradict the existence of the oral contract because they did not possess a right to title of the farm until the mortgage was satisfied. The tax forms only concern those years before the $65,000 mortgage was paid. Moreover, appellant's continuing improvements to the farm do not negate the oral contract because the farm was still his when those services were performed and the situation is one where appellees, who would get the property, were relatives, which makes it likely that he would take extra effort to maintain and improve the land. Contrary to appellant's assertion, the date for the transfer of the farm to appellees was made definite upon his conversation with them, prior to their cosigning on the $65,000 mortgage, and the oral contract occurred no later than when appellees actually cosigned on the note.
Accordingly, the evidence is not against the manifest weight of the evidence because the judgment in favor of appellees is supported by competent, credible evidence going to all the essential elements of the case. Therefore, appellant's first assignment of error is without merit.
In his second assignment of error, appellant contends that the trial court committed prejudicial error by failing to conclude that the oral contract violated the statute of frauds. Appellant states that the statute of frauds applies because this matter concerns the sale of land and appellees cannot show that their acts were the result of reliance on any claimed oral contract for the conveyance of the farm. Thus, the trial court never should have excepted the oral contract from the statute of frauds.
In Ohio, the statute of frauds states that no action shall be brought for the sale of land unless the agreement for such sale is in writing and signed by the party to be charged. R.C. 1335.05; Vargo v. Clark (1998),128 Ohio App.3d 589, 597. The statute of frauds provides greater assurance that the parties and the public can reliably know when a transaction occurs, because it has been reduced to a writing and is signed. N. Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984),16 Ohio App.3d 342, 348.
"In an action for specific performance of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative only when a failure to enforce the contract will result in fraud and injury." Tier v. Singrey (1951), 154 Ohio St. 521, paragraph one of the syllabus. To be entitled to enforce an oral contract for the sale of land, the one claiming to have purchased the land must have performed acts which changed his position to his prejudice in reliance on that promise. Id. at paragraph two of the syllabus. The Supreme Court of Ohio further held that possession of the land is not sufficient to remove the sale of that land from the operation of the statute of frauds. Id. at 526. Rather, only "[p]art performance of the contract may constitute a ground for relief from the statute of frauds, of which possession is usually an element." Id.
In Delfino v. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282, paragraph four of the syllabus, the Supreme Court further articulated the standard to be applied when a party seeks the enforcement of an oral contract for the sale of land when it held:
 "Part performance to be sufficient to remove an agreement from the operation of the statute of [frauds] * * * must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in statu quo."
 If the performance by the aggrieved party may be accounted for in any other manner or if a plaintiff has not altered his position in reliance on the agreement, then the case remains within the operation of the statute of frauds. Id. at 287. Indeed, "* * * nothing can be regarded as a part performance to take a verbal (oral) contract out of the operation of the statute which does not place the party in a situation whereby he will be defrauded unless the contract is executed." Id. at 288. A contract will be more easily found when one party induces the other to place himself or herself in worse condition than if no agreement existed and the former derives a benefit from the agreement at the expense of the other. Id.
In any event, the principle of equity is what serves to take an oral contract out of the statute of frauds. Id.
In Tier, the plaintiffs sought the enforcement of an oral contract for the sale of land. In that case, the plaintiffs made a down payment that was retained by the defendant for ten days without being cashed. The plaintiffs also tendered the balance to the defendant five days later, but this was rejected. The plaintiffs further borrowed purchase money and were paying the sum back with interest. Finally, the plaintiffs made improvements to the property, although they were made prior to the claimed contract. The Supreme Court of Ohio held that the statute of frauds could not be subjugated to principles of equitable enforcement since the down payment was returned, the tender of the outstanding balance was made after already being informed that the seller would not complete the sale, and the improvements were made prior to the alleged oral contract. Id. at 527-528. Regarding the return of the down payment, the court concluded that it constituted a detriment that was readily cured by means other than enforcement of the contract, namely, by repaying the money. Id. at 527.
However, in Rolland v. Biro (Nov. 18, 1982), Cuyahoga App. No. 44632, unreported, at 6, 1982 WL 2547, at 6, the Eighth District Court of Appeals held that there was an oral contract for the sale of land that would be taken outside the statute of frauds. In that case, the purchaser paid the full-alleged purchase price of the property, took possession, and made improvements subsequent to the contract. The appellate court concluded that there was credible evidence to support the trial court's finding of part performance. Id. at 6-7.
Moreover, in Stoops v. Miller (1994), 97 Ohio App.3d 265, this court also found that the doctrine of part performance applied to enforce an oral contract for the sale of land. In Stoops, the appellee and the appellants orally agreed that the appellants would lend the appellee money toward the purchase of their property. Ultimately, the parties entered into an agreement by which the appellee would make monthly payments to the appellants in the amount of $200 per month until the debt was paid. The appellee also had made a down payment and paid closing costs, escrow costs, and real estate taxes. The appellee additionally paid over $800 beyond the full amount of the loan. During the time on the property, the appellee made improvements to the land that he never would have made had he not thought he would own it once the debt was paid. He also bought a mobile home for the property in reliance on their arrangement.
Thus, we ruled that the appellee had fully performed on the oral contract and relied to his detriment on the appellant's promise to convey the property. Id. at 270. Therefore, the oral contract was enforced.Id.
In the case sub judice, the facts demonstrate that appellees had maintained the farm upon moving there in order to meet appellant's demand that his family help maintain and improve the farm and his businesses in order that they be given them. While living on the farm, appellees made numerous improvements. Importantly, they spent nearly $21,000 of their own money to rebuild the house after it was burned down and continued to provide substantial services consisting of time, money, and labor in maintaining and improving the farm. The trial court specifically found that appellees' efforts were done in reliance on appellant's promise that the farm would be transferred to them.[1]
More importantly, as previously discussed, appellees cosigned on the $65,000 promissory note after appellant told them that he would give them the farm if they did cosign. After appellant's promise, appellees made further improvements to the farm and continued living there with the expectation that they would receive the farm once the mortgage was paid-off. Thus, for nine years after the note was cosigned, appellees centered their entire lifestyle upon living on and improving the farm.
Also, appellant was benefited by his promise by virtue of the fact that the farm was then taken care of and he was able to get his loan for the purchase of the Bristolville property. Thus, like the plaintiffs in Biro
and Stoops, appellees will be defrauded if the oral contract is not enforced. Furthermore, the facts in this case are far more compelling for rendering a decision in favor of appellees than in the cases of Biro
and Stoops, because here, appellees made far more exhaustive improvements than the parties in those cases, and over a much longer period of time, and with considerable benefits to appellant. Therefore, appellant's second assignment of error is meritless.
For the foregoing reasons, appellant's assignments of error are not well-taken, and the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 _____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., dissents with Dissenting Opinion,
NADER, J., concurs.
[1] In its judgment entry, the trial court did not cite the proper standard for removing an oral agreement from the statute of frauds;i.e., the court never referred to the fact that there must be a detriment before this exception would apply. However, this error was harmless because the trial court made a specific factual finding that such a detriment did exist in this case.