JOURNAL ENTRY and OPINION
Plaintiff-appellant herein, Arthur Card, appeals from the verdict of the trial court finding in favor of defendant-appellee, Victoria Tatum, nka Victoria French, on count one of appellant's amended complaint and finding in favor of appellant in the amount of $4,000 on count two of appellant's amended complaint. The appellee has cross-appealed based on the failure of the trial court to grant her motion for an order directing transfer of the title of the property which is the subject of this action to her name.
Sometime during 1987, the appellee in this action fled to Florida, purportedly in fear of her life from several different gangs.[1] In 1989, the appellant learned that the appellee, who was still residing in Florida, was in arrears on her mortgage payments for the home that she still owned in Cleveland. The appellant offered to make all back mortgage payments and to pay off the delinquent taxes on the appellee's Cleveland property, located at 12801 Brookfield Ave. The parties agree that the appellant did, in fact, make the payments necessary to prevent the appellee's home from being foreclosed upon, but dispute the consideration that the appellee was to give the appellant in return. The appellee claims that in return for the payments, which totaled approximately $14,000, she agreed to allow the appellant to live in the house rent free for a period of five years, provided that he paid all property taxes and home insurance for the period in which he occupied the house. The appellant insists that the transaction between the parties was actually an agreement for the sale of the house. The appellant further contends that the house was in a state of disrepair at the time of the transaction because of a prior search by the Cleveland police SWAT team and that the appellee told him that she would rather he have the house than the bank. It is not apparent from the record the exact nature of the relationship between the parties or why the appellee would have wished to have given any equity interest she still possessed in the property to the appellant. As part of the transaction, the parties executed a general power of attorney in which the appellee gave the appellant full authority to manage the subject property.[2]
The appellant filed the within action on October 28, 1996, after being informed by the appellee of her intention to sell the property. Count one of the amended complaint was a cause of action for specific performance of the purported contract for the sale of the residence. Count two requested damages in the amount of $31,990 in the event that the trial court failed to find that a contract for the sale of the property existed. The alleged damages consisted of the initial monies paid by the appellant to pay off the mortgage and back taxes, repairs and improvements to the home made by the appellant, taxes paid by the appellant during the time that he resided in the house and monies paid by the appellant for homeowners' insurance for the residence.
The trial court, on November 18, 1997, initially entered judgment for the appellant as a sanction against the appellee for failure to attend a pre-trial. The trial court ordered that title of the property be transferred to appellant and also awarded attorney fees to the appellant. On May 26, 1998, this court reversed the decision of the trial court, finding that the trial court abused its discretion in denying appellee's motion to continue the pre-trial. The case was remanded by this court for a hearing on the merits.
Subsequent to a full evidentiary hearing, the trial court, in its memorandum of opinion which was journalized on December 1, 1998, found that appellant was precluded by the statute of frauds from asserting a contract for the sale of property. The trial court found for appellant on count two, but only awarded $4,000 in damages rather than the total amount of expenditures the appellant had made on the property because the court deducted from that amount the fair value of the use of the property over the subject time period. The trial court also ordered that the title to the property be transferred back to the appellee upon payment by the appellee of the $4,000 damage award to the appellant.
The appellant timely filed the within appeal from the order of the trial court and presents two assignments of error for this court's review. The first assignment of error states:
 THE TRIAL COURT ERRED IN RULING IN FAVOR OF THE DEFENDANT ON COUNT I OF THE PLAINTIFF'S AMENDED COMPLAINT FOR THE REMEDY OF SPECIFIC PERFORMANCE ON THE GROUND STATED IN ITS MEMORANDUM OF OPINION BECAUSE SUCH A FINDING IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE OF RECORD.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions inTibbs v. Florida (1982), 457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
Contrary to the assertions of the appellant, the greater weight of the evidence does not tend to indicate that the parties intended to transfer title property to the appellant in the course of their 1989 transaction. The fact that the appellant retained an attorney to draft a general power of attorney allowing the appellant to make decisions concerning the property is entirely inconsistent with the appellant's position that the parties understood the transaction to be a transfer of real property. There would have been no need for the appellant to procure a power of attorney from the appellee if he believed that title to the property was being transferred to his name.
Additionally, the evidence at trial showed that the appellant allowed all of the utilities, as well as the title of the house, to remain in the name of the appellee during the entire period he resided in the house. If the appellant really believed that he was the title owner of the property, surely he would have bothered to have had the utilities transferred to his name sometime during the approximately five-year period between when he first started living in the house and when the appellee informed him of her intention to sell the property. This court can take judicial notice that it is not customary for most home buyers to leave the utilities in the name of the former owner.
Per the statute of frauds, R.C. 1335.04, in order to bring a lawsuit for the enforcement of an agreement to transfer an interest in land, the agreement must be in writing and signed by the party to be charged. Gleason v. Gleason (1991), 64 Ohio App.3d 667,673. The appellant alleges that the purported oral contract in the within case was taken out of the statute of frauds by the doctrine of partial performance. The equitable doctrine of partial performance can remove an agreement for the transfer of an interest of land from the operation of the statute of frauds. Saydell's v. Geppetto's Pizza Ribs Franchise Sys.Inc. (1994), 100 Ohio App.3d 111, 121; Spaulding v. Guttshall
(Feb. 14. 1997), Lucas Cty. App. No. L-96-111, unreported.
The facts in this case are not consistent with partial performance of a contract for sale of the subject property. Rather, as the trial court expressly found, the actions of both parties are more consistent with appellee's version of events where the appellant contracted for approximately five years of pre-paid rent. If the total amount of payments made by the appellant towards the mortgage, past due and current taxes, improvements and homeowners insurance are divided by the number of months the appellant occupied the house up until the time of trial, the average monthly rent comes to less than $300.[3]
This seems an entirely reasonable monthly rental rate given the specifics of the subject property.
Therefore, because there was insufficient evidence of partial performance and because the facts plainly indicate that the parties did not intend to transfer title of the property, the trial court did not err in failing to award appellant the remedy of specific performance. Therefore, this assignment of error is overruled.
The appellant's second assignment of error states:
 THE TRIAL (SIC) ALSO ERRED IN AWARDING ONLY THE SUM OF $4,000.00 TO PLAINTIFF INSTEAD OF THE SUM OF $31,900.00 AS PRAYED FOR IN THE AMENDED COMPLAINT BASED UPON THE LEGAL THEORIES OF: DETRIMENTAL RELIANCE, QUANTUM MERIT, QUANTUM VALEBANT, AND TO PREVENT UNJUST ENRICHMENT OF THE DEFENDANT WHEN IT MADE ITS FINDING IN ITS MEMORANDUM OF OPINION BECAUSE IT'S (SIC) FINDING IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE OF RECORD.
The appellant essentially contends in this assignment of error that he was entitled to receive as damages every cent that he ever put into the property. This argument conveniently ignores the extended period of time in which the appellant was permitted to reside in the house while title was still in the name of the appellee. The trial court correctly set-off the reasonable rental value of the home during the relevant time period from the total amount of damages requested by the appellant. Thus, the appellee was not unjustly enriched when the trial court awarded the appellant "only" $4,000 in damages.
Because the damages awarded to the appellant were reasonable given the evidence introduced at trial, we find that there was no abuse of discretion by the trial court. This assignment of error is overruled.
The appellee presents one assignment of error for this court's review in her cross-appeal:
 THE TRIAL COURT COMMITTED AN ERROR OF LAW WHEN IT DID NOT PROVIDE IMMEDIATE AND UNCONDITIONAL REINSTATEMENT OF LEGAL TITLE IN CROSS-APPELLANT VICTORIA FRENCH.
In its memorandum of opinion, the trial court ordered that the title of the subject property be transferred back to the appellee via a quitclaim deed upon payment by the appellee of the $4,000 in damages awarded to appellant on count two of the amended complaint. On February 3, 1999, more than a month after the commencement of the within appeal, the trial court granted appellant's motion for stay of execution pending the outcome of this appeal. Subsequently, on March 11, 1999, the trial court required the appellant to post an $8,000 supersedeas bond. It ought be noted that notwithstanding the trial court's order, the bond was not posted nor was a waiver sought. Although this appeal could have been dismissed for noncompliance with the condition precedent, to-wit: the posting of a bond; this court will resolve the issues on the merits.
The orders of the trial court adequately protected the interests of the parties pending the disposition of this appeal. The stay of execution of judgment imposed by the trial court would have been operational whether or not the court ordered that title be transferred immediately back to the appellee. Thus, the appellee was not prejudiced by the trial court's failure to grant her motion for order directing transfer of property. Furthermore, the appellee has not appealed the amount of damages awarded by the trial court. Thus, she remains free to pay to the appellant the $4,000 damage award to effect the transfer of title back to her name upon the expiration of the stay entered by the trial court. In the event of non-acceptance by the appellant, the appellee can comply with the court's order and affect transfer by paying the $4,000 either into an appropriate escrow account or depositing same with the clerk of courts. This assignment of error is overruled.
Judgment affirmed.
It is ordered that defendant-appellee/cross-appellant recover of plaintiff-appellant/cross-appellee her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
______________________________________ MICHAEL J. CORRIGAN JUDGE
DYKE, A.J. and BLACKMON, J. CONCUR.
[1] The appellee testified that she believed that a number of different individuals were out to get her because she had provided testimony against a defendant in a drug trial and because she had informed on a fugitive who had taken refuge in her house.
[2] The general power of attorney was drafted by attorney Donald Card, who is the cousin of the appellant, at the request of the appellant. The document is silent as to any present or future transfer of title from the appellee to the appellant.
[3] The monthly rent paid by the appellant is even less when the $4,000 awarded in damages by the trial court is offset from the total amount of money spent on expenses by the appellant.