OPINION
This case has an extensive and contentious history, voluminous filings, and the following brief overview sets forth only those facts necessary for this opinion. Appellant, Susan A. Solér, initially retained Robert St. Clair to demand an accounting for the partnership in which she was involved, along with her mother and her brother, because Solér suspected her brother was defrauding her. When her mother died in October 1988, she then asked St. Clair, who also recruited J. Michael Evans, to represent her in probate court during the pendency of her mother's estate. The allegations of legal malpractice, which spawned the ensuing litigation, arose out of St. Clair and Evans' representation of Solér in the probate court.
On November 30, 1995, Solér, through her counsel, appellant, James P. Connors, filed a complaint alleging breach of contract, legal malpractice, negligence and conversion against the firm of Evans, St. Clair Kelsey, and Robert St. Clair, J. Michael Evans, Charles E. Kelsey, Paul M. Aucoin and David T. Bainter as individuals. St. Clair filed a counterclaim for legal fees. Solér then filed an amended complaint alleging the same causes of action against the same defendants and adding Michael A. Nieset, David A. Belinky, Randall E. Yontz, Robert C. Hetterscheidt, David S. Heier, Carol J. King and Jan L. Maiden as defendants. The complaint was filed against these individuals because Connors believed they were partners in the law firm based in part upon the letterhead which listed the law offices of Evans, St. Clair Kelsey and each individual attorney. The defendants filed answers.
Belinky and Yontz each filed a motion for summary judgment with affidavits denying the existence of a partnership and asserting that an office-sharing arrangement existed. The trial court granted these motions for summary judgment and Solér appealed. This court upheld the trial court's decision in Solérv. Evans, St. Clair Kelsey (Aug. 19, 1997), Franklin App. No. 97APE04-485, unreported ("Solér I"). The Supreme Court of Ohio dismissed the appeal. See Solér v. Evans, St. Clair Kelsey
(1997), 80 Ohio St.3d 1477.
On November 18, 1997, Solér filed a Civ.R. 60(B) motion to vacate the summary judgments granted to Belinky and Yontz on the basis of newly-discovered evidence that Belinky and Yontz committed fraud on the court in obtaining summary judgment and on newly-discovered evidence that a partnership existed. Solér alleged that evidence existed to show Belinky and Yontz had represented to a malpractice insurance carrier that they were partners in the law firm of "Evans, St. Clair Kelsey." The trial court denied the motion on June 18, and again on June 23, 1998.
A flurry of motions for summary judgment followed. Solér filed a motion for summary judgment on her claims for breach of contract, fraud, negligence and/or legal malpractice and conversion. St. Clair and Evans filed a joint motion for summary judgment. Bainter, Hetterscheidt, Maiden, Aucoin, Nieset and Kelsey also filed motions for summary judgment.
On March 30, 1998, the summary judgment motions of Bainter and Hetterscheidt were granted. On April 17, 1998, a decision granting Maiden's summary judgment motion was filed. Also on that day, a decision denying the motions for summary judgment of Aucoin, Evans, Kelsey, Nieset and St. Clair was filed.
At the request of Solér, the assigned trial judge recused himself. Solér filed a motion to have the case assigned to a visiting judge but the motion was overruled. Solér also filed an affidavit of disqualification with the Supreme Court of Ohio against the newly assigned judge and all Franklin County judges, but it was denied.
Since no judgment entries had been filed, the summary judgment motions of Bainter, Hetterscheidt, Maiden, King, Kelsey, Aucoin and Neiset were considered again by the new trial judge and they were granted. None of the entries contained an express finding of no just cause for delay pursuant to Civ.R. 54 and the entries regarding King and Kelsey contained language expressly finding them not to be final orders. Thus, the remaining defendants were the law offices of Evans, St. Clair Kelsey and St. Clair, Evans and Heier as individuals. Heier filed bankruptcy proceedings on May 11, 1998, and the action against him has been stayed.
The joint summary judgment motion of St. Clair and Evans was overruled on June 18, 1998. On October 9, 1998, the trial court held a hearing on several matters, including whether Solér's attorney, Herbert W. Walker, was qualified as an expert witness, whether Solér had expert testimony to support her malpractice claim against Evans, and whether Solér's claims against St. Clair and Evans were barred by the statute of limitations. On October 21, 1998, Solér voluntarily dismissed her claims pursuant to Civ.R. 41(A)(1) against all parties.
On December 7-9, 1998, St. Clair's counterclaim against Solér proceeded to trial to the court and St. Clair was granted a judgment for $47,823.72 with ten percent interest. St. Clair, Evans, Bainter, Kelsey and King filed motions for sanctions. The trial court found that Solér and Connors had engaged in frivolous conduct and were jointly and severally liable in the following amounts: to St Clair $54,654.81; Evans $81,799.14; Bainter $53,752.53; Kelsey $66,376.94; and King $26,710.78; for a total of $283,294.20, plus ten percent interest.
Solér and Connors filed a joint notice of appeal. Solér appealed from the decisions entered on April 16, June 18, June 23, and September 2, 1998, overruling her motions to vacate the judgments against Belinky and Yontz and overruling her motion for a hearing on the motion to vacate; the decision and entry entered on January 12, 1999, awarding judgment to St. Clair; Findings of Fact and Conclusions of Law filed on April 5, 1999, awarding judgment to St. Clair on his counterclaim; and the judgment awarding sanctions. Connors also appeals the August 9, 1999 decision awarding sanctions. Solér and Connors filed a joint brief to this court and raised the following assignments of error; however, only the third assignment of error pertains to Connors:
 1. The trial court abused its discretion by denying plaintiff's Civ.R. 60(B) motion to vacate judgments of defendants Belinky and Yontz and, alternatively, by failing to conduct an evidentiary hearing on the motion.
 2. The trial court erred by granting judgment for defendant St. Clair on his counterclaim for legal fees.
 3. The trial court erred by imposing sanctions for frivolous conduct totaling $283,294.20 against plaintiff and her counsel.
By her first assignment of error, Solér contends that the trial court abused its discretion by denying her Civ.R. 60(B) motion to vacate the judgments of Belinky and Yontz and, alternatively, by failing to conduct an evidentiary hearing on the motion. In GTE Automatic Electric v. ARC Industries (1976),47 Ohio St.2d 146, paragraph two of the syllabus, the court set forth the requirements a movant must demonstrate to prevail upon a Civ.R. 60(B) motion, as follows:
 * * * (1) [T]he party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.
The moving party must establish the three requirements separately and the test is not fulfilled if any one of the requirements is not met. GTE, at 151. The granting or denying of a Civ.R. 60(B) motion is a matter within the sound discretion of the trial court and the court's ruling will not be reversed absent a showing of abuse of discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75,77. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In this case, the originally assigned judge did hold a hearing on April 14, 1998, but the court limited the hearing to the issue of whether the trial court had jurisdiction to entertain a Civ.R. 60(B) motion since the judgment had been affirmed on appeal. However, the trial court did permit Connors to present a brief outline of the evidence in support of his motion. When Solér attempted to have the new trial judge hold a hearing, the new trial judge found that a hearing had been held and refused to revisit the issue. Solér contends that the trial court abused its discretion in overruling her motion because she had met the requirements of Civ.R. 60(B).
In Solér's first amended complaint, she contends that the causes of action arise from defendants' representation of her regarding her mother's estate. Solér's mother died on October 8, 1988. Solér and St. Clair entered into a written fee agreement which was dated October 8, 1988, but not signed by Solér until May 3, 1989. Regardless of whether a partnership ever existed among the defendants, both Belinky and Yontz had ceased their association with the other defendants by October 1988, when Solér alleges that the malpractice occurred. Belinky moved his office and ended his affiliation with Evans, St. Clair Kelsey on September 11, 1988. Yontz moved his office and ended his affiliation with Evans, St. Clair Kelsey in August 1988. Having ended their affiliation with the remaining defendants, these defendants could not be liable for any alleged misdeeds, even assuming a partnership had existed at one time. Thus, Solér's Civ.R. 60(B) motion was properly denied because Solér does not have a meritorious claim to present as to Belinky and Yontz, even if she can prove the existence of a partnership or partnership-in-fact. Where a movant fails to assert operative facts which would warrant relief under this rule, the motion may be denied by the trial court without a hearing. Justice v.Lutheran Social Serv. of Cent. Ohio (1992), 79 Ohio App.3d 439,442-443. Thus, the trial court did not abuse its discretion in denying Solér's Civ.R. 60(B) motion and Solér's first assignment of error is not well-taken.
By her second assignment of error, Solér contends that the trial court erred by granting judgment for St. Clair on his counterclaim for legal fees. Solér contends that the trial court erred in several respects: (1) the trial court denied Solér a jury trial; (2) the trial court's judgment was against the manifest weight of the evidence; (3) the trial court denied Solér the right to present evidence in support of her affirmative defenses; (4) the written fee agreements were unreasonable, excessive, overreaching and void as a matter of law; and (5) the trial court failed to make proper findings of fact and conclusions of law.
In Solér's first issue regarding her second assignment of error, she contends that the trial court denied her a jury trial. "It is contemplated by Civ.R. 38 that notwithstanding that the right to trial by jury exists, such right is waived unless proper demand is made therefor." Cincinnati Ins. Co. v. Gray
(1982), 7 Ohio App.3d 374, 377. Civ.R. 38 further provides:
 (B) Demand. Any party may demand a trial by jury on any issue triable of right by a jury * * *. Such demand shall be in writing and may be indorsed upon a pleading of the party. If the demand is endorsed upon a pleading the caption of the pleading shall state "jury demand endorsed hereon." * * *
 (C) Specification of issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. * * *
 (D) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(B) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.
In this case, Solér filed a jury demand on her complaint but that complaint was dismissed pursuant to Civ.R. 41(A)(1). St. Clair did not request a trial by jury in his counterclaim and Solér did not request a jury demand in her reply to St. Clair's counterclaim. Solér filed a motion in limine to enforce her right to trial by jury on December 2, 1998, five days before the trial began. The trial court overruled the motion, finding that it was untimely. Then Solér voluntarily dismissed her complaint pursuant to Civ.R. 41(A). "A dismissal without prejudice leaves the parties as if no action had been brought at all." DeVillePhotography, Inc. v. Bowers (1959), 169 Ohio St. 267, 272. Thus, the parties were in the position as if the complaint had not been filed and, since Solér did not request a jury trial in her answer to the counterclaim, no timely request was made. Solér's first issue within her second assignment of error is not well-taken.
The third issue in Solér's second assignment of error is dispositive of the remaining issues. Solér contends that the trial court denied her the right to present evidence in support of her affirmative defenses. Solér argues that the trial court erred in excluding her relevant evidence that St. Clair breached his duties and obligations which barred his recovery of legal fees. The trial court ruled that any evidence of St. Clair's malpractice was inadmissible because Solér did not plead such as a defense. The trial court stated:
 * * * I think we are walking a fine line. I think malpractice is not a defense in this case, okay. That's clear. I don't know how I can say it more clear. * * *
* * *
 * * * [S]o I want to make it clear nobody's going to testify in this case on malpractice.
 MR. CONNORS: We asserted that as a defense to the counterclaim.
* * *
 THE COURT: Wait, wait, wait, please. We talked about that yesterday. I believe, unless I'm losing my mind, that I specifically asked that question, and I asked to go back, look at the pleadings, and we did, and the answer is no, you didn't.
* * *
 MR. WALLER: I just want to make sure. The reply says, fourth defense: Defendant and his partners have breached their obligations and duties under their agreement with plaintiff.
THE COURT: That's not malpractice.
 MR. CONNORS: Wait. They breached their obligations and duties under the agreement with plaintiff. That's absolutely malpractice.
 THE COURT: That's not malpractice. That's a breach of contract. [December 7-9, 1998, Tr. Vol. II, 298-300.]
In this case, Solér's reply to the counterclaim contained the following:
Fourth Defense
 6. Defendant and his partners have breached their obligations and duties under their agreements with Plaintiff.
In Rumley v. Buckingham, Doolittle Burroughs (1998),129 Ohio App.3d 638, 641, citing Jenkins v. Talda (June 9, 1994), Franklin App. No. 94APE02-137, unreported, this court determined that, when all of a plaintiff's claims are premised upon defendant's alleged acts or omissions committed in his representation of plaintiff, the plaintiff's claims "sound in legal malpractice, regardless of his attempt to label his causes of action as something other than legal malpractice." This court then cited Muir v. Hadler Real Estate Mgmt. Co. (1982), 4 Ohio App.3d 89,90, as follows:
 "Malpractice by any other name still constitutes malpractice. As stated in Richardson v. Doe (1964), 176 Ohio St. 370, at page 372 [27 O.O.2d 345, at page 346-347, 199 N.E.2d 878, at page 879-880], malpractice consists of `the professional misconduct of members of the medical profession and attorneys.' Such professional misconduct may consist either of negligence or of breach of the contract of employment. It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice." Id. at 90 * * *.
Thus, a claim for breach of contract where the claim is premised upon the attorney's representation of the plaintiff is a claim for malpractice. The trial court erred in finding that Solér did not plead malpractice as a defense and in excluding such evidence at the trial. Solér's third issue within her second assignment of error is well-taken.
The remaining issues within Solér's second assignment of error have been rendered moot by our finding that the trial court erred in excluding evidence of Solér's defense of malpractice at the trial. Solér's second assignment of error is well-taken in part and overruled as moot in part.
By Solér's third assignment of error and Connors' assignment of error, they contend that the trial court erred by imposing sanctions for frivolous conduct totaling $283,294.20 against them. The analysis of a claim made pursuant to R.C.2323.51 requires a determination of "(1) whether an action taken by the party to be sanctioned constitutes `frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party."Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 291.
R.C. 2323.51 provides, as follows:
(A) As used in this section:
(1) "Conduct" means any of the following:
 (a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action * * *;
* * *
(2) "Frivolous conduct" means either of the following:
 (a) Conduct of an inmate or other party to a civil action * * * that satisfies any of the following:
 (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
The initial decision as to whether a party's conduct was frivolous involves a factual determination, which is "particularly true if a court must determine if conduct `serves merely to harass or maliciously injure another party to the civil action.'" Lable Co. v. Flowers (1995), 104 Ohio App.3d 227, 233, quoting R.C.2323.51(A)(2)(a). A determination by the court that the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension of existing law requires a legal analysis. Lable Co., supra.
In Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52, this court stated:
 * * * [N]o single standard of review applies in R.C. 2323.51 cases. The inquiry necessarily must be one of mixed questions of fact and law.
 With respect to purely legal issues, we are persuaded by the * * * line of cases which provide for a de novo
standard of review. When an inquiry is purely a question of law, clearly an appellate court need not defer to the judgment of the trial court. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279
* * *.
The trial court determined that the statute of limitations had expired as to Solér's malpractice claim as to Evans, Bainter, Kelsey and King, but not as to St. Clair as an individual because St. Clair had signed an agreement which waived the provisions of R.C. 2305.11(A) in March 1991. St. Clair had signed the letter twice, once on behalf of Evans, St. Clair 
Kelsey as a partner, and the second time as an individual attorney. The trial court found that the agreement did not toll the statute of limitations on behalf of any attorney other than St. Clair.[1]
The trial court also found that Connors should have known by November 30, 1995, the date the original complaint was filed, that the lawyers practicing at Evans, St. Clair Kelsey had an office-sharing arrangement only, and were not partners-in-fact because the trial court determined that no partnership existed and no one but St. Clair had waived the statute of limitations. The trial court also seemed to base its decision on the Belinky and Yontz summary judgments, although they were not affirmed on appeal until August 1997.
The trial court found that Connors and Solér acted in a frivolous manner in failing to cooperate in the scheduling of Solér's deposition and by Solér refusing to testify in a forthright manner. The trial court also found that Solér and Connors refused to cooperate with counsel for the defendants in scheduling discovery, deliberately scheduled the deposition of Solér's expert in a manner calculated to annoy and harass counsel for the defendants, and falsely accused Evans of taking documents. Other discovery violations that the court found to support an award of sanctions include that Connors served more than forty interrogatories upon the defendants, Connors refused to return a document provided to him during discovery that was the subject of a protective order, and he attempted to mislead the court that defendants were the ones refusing to cooperate in discovery.
The trial court found frivolous conduct in the repeated attempts to file a second amended complaint to allege fraud, finding no evidence was provided to support a fraud claim, when the trial court concluded Solér and Connors knew they did not have a cause of action based on fraud; misrepresentations to the court regarding the holdings of decisions and authorities cited; and misrepresentations to the court as to opposing counsel's positions. The trial court also found that Solér attempted to avoid the trial on St. Clair's counterclaim by requesting a continuance.
The trial court also found that Solér and Connors refused to follow the law-of-the-case doctrine as set forth inSolér I because, one, they filed a Civ.R. 60(B) motion and, two, based on the decisions rendered in favor of Belinky and Yontz, did not dismiss the claims against Evans, King, Kelsey and Bainter at that time. The decision as to Belinky and Yontz, however, is limited to those individuals.
Solér and Connors contend that the sanctions motions of St. Clair, Bainter, Kelsey and King were not timely filed. At the sanctions hearing, Connors admitted that Evans' motion was timely filed. R.C. 2323.51(B)(1) requires that the motion for sanctions be filed within twenty-one days after the entry of judgment in a civil action. Thus, Solér and Connors argue that Bainter, Kelsey and King should have filed their motions within twenty-one days of the entries granting them summary judgment and St. Clair should have filed his motion within twenty-one days of the voluntary dismissal. Bainter, Kelsey and King filed their motions within twenty-one days[2] of the voluntary dismissal and St. Clair filed his motion within twenty-one days of the counterclaim judgment. The judgment entries granting the summary judgment motions of Kelsey and King specifically stated that the order was not a final, appealable order. Thus, Kelsey and King could not have filed their motions for sanctions until the case was terminated.
The judgment entry granting Bainter's summary judgment motion did not contain Civ.R. 54(B) language, nor did it state that it was "not" a final order as did the entries for Kelsey and King. Civ.R. 54(B) provides that the trial court must make an express finding that there is no just reason for delay when it enters judgment as to fewer than all of the defendants for the judgment to be a final appealable order. Thus, Bainter also filed his motion for sanctions timely since the decision could have been reconsidered anytime until the matter was terminated.
St. Clair's motion for sanctions was also timely filed because the voluntary dismissal was not a final order as to St. Clair since the counterclaim was still pending. See Gleason v.Gleason (1991), 64 Ohio App.3d 667, 671, fn 4; Tern Plumbing Heating v. McVey (Nov. 1, 1989), Ashland App. No. CA-931, unreported. Thus, all the sanctions motions were timely.
The trial court found that Solér and Connors did not act frivolously in instituting litigation against St. Clair, but that they acted frivolously in the manner in which the litigation was conducted. Thus, the trial court found that St. Clair incurred legal fees and expenses in twice the amount he would have reasonably incurred if this case had been properly commenced and prosecuted, and awarded St. Clair half of his fees and expenses. However, St. Clair's attorney testified at the sanctions hearing and indicated that a minimum of thirty percent of his fees were attributable to the conduct of Connors and Solér and only requested that the trial court award thirty percent of St. Clair's fees and costs. The trial court specifically found the entire testimony of Connors at the sanctions hearing as to the course of the litigation not credible. (See Decision and Entry, Aug. 9, 1999, p. 6; Tr. 879.) Given that finding, there was evidence that all of the conduct which the court found to be frivolous occurred. Thus, there is evidence supporting a finding of frivolous conduct but no evidence for the trial court to rely upon in awarding more than the thirty percent of St. Clair's fees. Solér's third assignment of error and Connors' assignment of error is well-taken in part as to St. Clair.
Evans represented Solér as trial counsel during the administration of her mother's estate. The trial court found that Solér and Connors should have known that there was no basis for Evans to be liable for St. Clair's conduct because there was no actual partnership or partnership by estoppel and no expert had been deposed who expressed an opinion that Evans committed malpractice. Thus, the trial court awarded Evans all of his fees incurred in defense of Solér's complaint based on the fact that the claims made by Solér and Connors were frivolous, and that Solér and Connors engaged in frivolous conduct during the prosecution of her claims.
The trial court also awarded fees to Bainter, Kelsey and King based upon the fact that the claims made by Solér and Connors were frivolous since the court found there was no basis to sue them because they were not partners and that Solér and Connors engaged in frivolous conduct during the prosecution of the claims. Bainter's summary judgment motion was granted on May 4, 1998. The trial court did not make an express finding in the entry that there was no just reason for delay, so the order was not appealable at that time. Civ.R. 54(B). The judgment entries granting summary judgment to Kelsey and King were specifically designated to be "NOT a final appealable order." Since the orders were not final, they were interlocutory and could have been changed by the court at any time prior to the dismissal.
However, since Solér and Connors dismissed this case pursuant to Civ.R. 41(A), "[a] dismissal without prejudice leaves the parties as if no action had been brought at all." DeVillePhotography, Inc. Thus, there has been no determination as to the issue of whether a partnership existed.
"[A] voluntary dismissal * * * dissolves `all interlocutory orders made by the court in that action,' including a partial summary judgment." Nielsen v. Firelands Rural Elec. Coop., Inc. (1997),123 Ohio App.3d 104, 106, quoting Auto-Owners Mut. Ins. Co. v.Checker Cab, Inc. (July 30, 1996), Lucas App. No. L-96-170, unreported, citing Cent. Mut. Ins. Co. v. Bradford-White Co. (1987),35 Ohio App.3d 26. A Civ.R. 41(A) dismissal leaves the parties as if no action had been brought at all. See Denham v. New Carlisle
(1999), 86 Ohio St.3d 594, 596, citing DeVille Photography, Inc., supra.
In Denham, the Supreme Court of Ohio limited the concept of a Civ.R. 41(A) dismissal rendering the parties as if no suit had ever been commenced by determining the effect was only as to the parties who were designated in the dismissal notice, or, in other words, those who were dismissed from the suit pursuant to Civ.R. 41(A). In Denham, one defendant was granted a summary judgment and, upon the dismissal of all the other remaining parties, that summary judgment became a final, appealable order. However, Denham is distinguishable from this case because, here, Solér and Connors dismissed all the defendants, rather than any "remaining" defendants. (See Notice of Dismissal, Oct. 21, 1998.) Thus, the summary judgments did not become final upon the dismissal but were dissolved along with any other interlocutory orders.
This case is similar to Massi v. Stringfield (Feb. 6, 1997), Medina App. No. 2607-M, unreported, in which the appellants filed suit against several defendants. The appellee was granted summary judgment but the order was not a final order. The appellants then filed a notice of voluntary dismissal and dismissed the entire action without prejudice. Appellants filed an appeal from the grant of summary judgment but the court dismissed the appeal finding the order was dissolved by the dismissal.
Thus, the summary judgment orders were dissolved by the voluntary dismissal in this case. At the sanction hearing, the trial court excluded all evidence related to the existence of a partnership because the trial court stated:
* * * [W]e are not here to try the case. * * *
* * *
 * * * Understand. Look, Mr. Connors, the issue before me is whether or not these attorneys' fees from the point in time before 1/4/98 to whenever they end, first of all, were they necessary; were they necessary because of your frivolous conduct? Were they reasonable? * * * [April 23, 26, 27, 28, 1999, Tr. Vol. I, 72-74.]
The trial court excluded relevant evidence as to the existence of a partnership which is the sole basis for the trial court finding that Solér and Connors acted frivolously in filing the lawsuit against Evans, Bainter, Kelsey and King. Without the partnership issue determination, the trial court had no evidence to rely upon in determining that Solér and Connors acted frivolously in suing these defendants. The trial court erred in awarding Evans, Bainter, Kelsey and King fees based upon such a finding. Since the trial court did not designate which fees were based upon the filing of the action against each defendant as a partner and which fees were based upon frivolous conduct during litigation, the trial court must redetermine the fees awarded since discovery sanctions are appropriate, but sanctions based upon the finding that no partnership existed are inappropriate at this time since there has been no such finding, but may not be inappropriate after the court determines the partnership issue. Solér's third assignment of error and Connors' assignment of error is well-taken in part as to Evans, Bainter, Kelsey and King.
For the forgoing reasons, Solér's first assignment of error is overruled; the second assignment of error is overruled as to the trial court's denial of a jury trial, and it is sustained as to Solér's right to present defenses to the counterclaim, and overruled as moot as to the remaining issues; and Solér's third assignment of error and Connors' assignment of error is sustained in part and overruled in part.
Given the number of local attorneys involved in this matter who maintain active practices, particularly in the Franklin County Court of Common Pleas, appointment of a visiting judge from another county to preside over the case upon remand is strongly advised. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
[1] In March 1990, Solér hired other counsel to represent her to enforce the terms of the settlement agreement against her brother. There was an issue as to when Evans, St. Clair Kelsey stopped representing Solér because St. Clair and Evans continued to obtain mortgages as security for the settlement agreement.
[2] The defendants filed their motions on the twenty-second day from the dismissal but the twenty-first day was a legal holiday.