[Cite as *Midamco v. Sashko*, 2012-Ohio-1189.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96683 and 97180**

## MIDAMCO

PLAINTIFF-APPELLEE

vs.

## MARK L. SASHKO, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:
REVERSED AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-704111

**BEFORE:** Keough, J., Boyle, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** March 22, 2012

**ATTORNEYS FOR APPELLANTS**

Joseph B. Jerome
Andrew T. Czarzasty
Joseph B. Jerome & Associates
55 Public Square
Suite 2020
Cleveland, OH 44113

Joseph N. Isabella
921 Literary Road
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

Jeffrey J. Wedel
Ryan A. Sobel
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendants-appellants, Mark Sashko and Mark L.S., Inc. (collectively, "Sashko") appeal from the trial court's judgments, rendered after a bench trial, ordering Sashko to (1) pay $14,968.51 for past due rent, fees, and cleaning expenses, plus interest on the unpaid rent, to plaintiff-appellee, Midamco; (2) restore Broadway Dunham Lanes to its condition as of June 8, 2009 so that it is operable as an 18-lane bowling alley; and (3) pay rent at the rate of $4,000 per month for the period from January 28, 2011 until four and one-half months after the premises are restored to an operable bowling alley. Because the

trial court erred in ordering specific performance, i.e., that Sashko restore the premises to an operable bowling alley, we reverse and remand for a determination of money damages. We also reverse the court's award of attorney fees and remand for a hearing to determine which of Midamco's pretrial fees and expenses were related to the breaches it proved at trial.

## I. Facts and Procedural History

{¶2} Midamco owns Mapletown Shopping Center in Maple Heights, Ohio; various commercial tenants lease space in the center from Midamco. One of the commercial units is a bowling alley located in the basement of the shopping center and operated under the name Broadway Dunham Lanes.

{¶3} In February 1995, Sashko purchased for $150,000 the business and assets of Broadway Dunham Lanes from the prior tenant. The security agreement for the sale provided that the sale included "the fixtures and equipment" of the business, including "18 automatic pinsetters, 18 bowling lanes, 9 Brunswick ball returns, 9 overhead scorers," as well as various other furniture and items related to the conduct of a retail bowling business.

{¶4} Sashko also negotiated a five-year lease with Midamco in 1995. The lease agreement defined the leased premises as a "storeroom * * * known as Unit 157468" and provided that the premises were to be operated as a bowling alley during the entire term of the lease. Section 9.02 of the lease provided that Sashko was to maintain the premises in a "clean, orderly, safe[,] and sanitary condition." Section 9.06 of the lease provided that at the expiration of the lease, Sashko was to surrender the leased premises "in the same

condition as the [l]eased [p]remises were upon delivery of possession thereto under this [l]ease and as thereafter improved, reasonable wear and tear excepted * * *." Under Section 9.04 of the lease, Midamco agreed to "maintain in good order, condition, replacement[,] and repair the foundation, roof, and exterior walls * * * of the Leased Premises."

{¶5} The lease was renewed for five years in 2000 without any modifications. To upgrade the bowling alley, which had been in operation at the Mapletown Shopping Center since 1948, in December 2000, Sashko purchased and installed an electronic scoring system, tables, chairs, and a bank-shot bumper system at a cost of $140,561.46.

{¶6} In 2005, the parties entered into negotiations for another five-year lease extension (February 1, 2005 through January 31, 2010). In exchange for Midamco reducing its rent demand from $5,000 to $4,000 per month, Sashko and Midamco executed an amendment to the lease whereby Sashko released Midamco "from any and all liability, claims, costs, causes of action, damages, and expenses, including, without limitation, attorneys' fees, that it had, has or may have relating to the ground water seepage which has occurred from time to time at the [p]remises. Further, [t]enant shall indemnify, defend, and hold [l]andlord harmless from and against any and all liability, claims, costs, causes of action, damages, and expenses, including, without limitation, attorneys' fees, relating to any prior or future occurrences of the ground water seepage of the [p]remises."

{¶7} The addendum was the parties' attempt to address the significant water issues that had troubled the bowling alley through the years. It was uncontroverted at trial that

water seeping through the foundation and concrete floor, as well as sewer backups and water leaking from the ceiling, had damaged the wooden substructure of the bowling alley floor and created a breeding ground for mold and mildew.

{¶8} In December 2008, Sashko entered into a tentative agreement to sell the bowling alley business and equipment to the Church of the Lion of Judah for $165,000. The sale was not consummated because the church could not secure financing and Midamco would not negotiate on the monthly lease rate.

{¶9} In June 2009, Sashko gave Midamco written notice that he did not intend to renew his lease when the term expired at the end of January 2010. In August 2009, Sashko closed the bowling alley and began dismantling and removing equipment.

{¶10} On September 15, 2009, Midamco filed its complaint for a temporary restraining order and preliminary injunction, declaratory relief, and breach of contract. The same day, the trial court granted an ex parte temporary restraining order that prohibited Sashko from further dismantling the bowling alley. On October 29, 2009, the parties stipulated to a preliminary injunction that prohibited any further removal of equipment from the bowling alley until the termination of the litigation.

{¶11} The matter was tried to the bench. Midamco sought damages for four months of unpaid rent, its expenses in cleaning the bowling alley, and attorney fees. It also sought an order of specific performance requiring Sashko to remediate any damages to the bowling alley related to water damage and restore the premises to a functional bowling alley. Midamco's claims for remediation were based on its interpretation that Section

9.02 of the lease required Sashko to maintain the premises in a "clean" and "sanitary" condition, and that the addendum to the lease, in which Sashko agreed to "indemnify" Midamco from liability for claims resulting from water seepage on the premises, required that Sashko remediate any water damage. Midamco further claimed that under Section 9.06 of the lease, which required Sashko to surrender the premises at the end of the lease term in the same condition as received, it owned all of the equipment in the bowling alley.

{¶12} In its findings of fact and conclusions of law issued filed January 31, 2011, the trial court found that the water damage to the wood substructure of the bowling alley was caused by water seeping from the foundation or the exterior walls, and that under Section 9.04 of the lease, repair of such damage was Midamco's responsibility. The court further held that the parties did not provide in the 2005 addendum to the lease that Sashko was to pay for the water damage. Accordingly, the court denied Midamco's request that Sashko repair or remediate water damage to the bowling alley.

{¶13} With respect to ownership of the equipment in the bowling alley, the trial court found that Midamco owned the wood bowling lanes, but Sashko owned the automatic pinsetters, ball returns, gutters, electronic scoring equipment, tables, chairs, counters, coolers, and other moveable property on the premises (except for the sump pump installed by Midamco).

{¶14} The court further found that Sashko did not pay rent for the last four months of the lease period (October 2009 through January 2010), and that the lease also provided for a common area maintenance fee of $200 per month, a late payment fee of $100, and

interest of 18% per annum for delinquent rent from the due date. The court also found that Midamco had paid $1,935.19 in cleaning expenses. After deducting Sashko's security deposit held by Midamco, the court entered judgment for Midamco in the amount of $14,968.51 for past due rent, fees, and cleaning expenses, plus interest on the unpaid rent to be calculated by the parties.

{¶15} The court also found that under the lease, Midamco was entitled to have the premises maintained as a bowling alley for the entire term of the lease and that Sashko was not entitled to remove the bowling equipment until the lease expired. Accordingly, the trial court ordered that Sashko restore the removed or comparable equipment to the premises "so that it is operable as an 18-lane bowling alley as it was on June 8, 2009." The court further ordered that Sashko pay rent at the rate of $4,000 per month for a period from February 1, 2010 until four and one-half months after the premises were restored to use as a bowling alley. The court ordered that at the conclusion of the four and one-half month period, Sashko could begin "an orderly and prompt removal" of his equipment, without obligation to pay further rent.

{¶16} Subsequently, in response to Midamco's motion for clarification and/or reconsideration, on March 18, 2011, the trial court issued an entry clarifying that Sashko was to pay rent at the rate of $4,000 per month for the entire period after January 28, 2011[1] in which the premises were not usable as a bowling alley, together with the four and

---

[1] This date appears to be wrong, although the parties do not raise the issue. The lease ended on January 31, 2010 and the trial court's original judgment provided that Sashko pay rent from

one-half month period after the premises had been restored for such use.   The court further ordered that Sashko was to restore the premises not later than 30 days from the date of its judgment.

**{¶17}** The trial court subsequently held a hearing on Midamco's motion for attorney fees.   It found that Midamco was entitled to fees under Section 18.04 of the lease and awarded it $30,465.90 in fees and expenses.

**{¶18}** In April 2011, Sashko filed a motion requesting that the court vacate its judgment in part.   Sashko argued that he had inspected the bowling alley subsequent to the court's judgment and discovered that Midamco had failed to attend to the water seepage problems in the bowling alley during the pendency of the litigation, which had resulted in substantial damage to the pinsetting and other equipment that Sashko had left on the premises as required by the court's temporary restraining order and preliminary injunction. Accordingly, Sashko argued that restoring the bowling alley to its prior condition would impose "extraordinarily more complicated restoration activities" than those contemplated by the court at the time of judgment.   Further, Sashko argued that Midamco's failure to attend to the ongoing water seepage after he vacated the premises in 2009 had allowed even more mold than that testified to at trial to accumulate, such that anyone working on the premises would be required to take extensive and extraordinary precautions.   Sashko contended that the extraordinary expense of restoring the bowling alley under these

February 1, *2010*, until four and a-half months after the premises are restored.

conditions was necessitated by Midamco's failure to maintain its property during the pendency of the litigation and, hence, would constitute an unreasonable penalty on him not contemplated by the court when it rendered judgment. Sashko asked that the court vacate its order of specific performance that he restore the premises as an operable bowling alley, and instead order money damages. Attached to Sashko's motion were several unauthenticated pictures of the bowling lanes and pit area allegedly taken during his inspection subsequent to the court's judgment.

{¶19} The trial court denied Sashko's motion. The court ruled that Sashko had failed to allege any bases set forth in Civ.R. 60(B)(1) to (4) for vacating the court's judgment. It further ruled that Sashko had not submitted by affidavit any evidence that he could not comply with the court's order and, therefore, he had failed to set forth a basis under Civ.R. 60(B)(5) for vacating the order.

{¶20} Sashko now appeals from the trial court's judgments.

## II. Specific Performance

{¶21} In his first assignment of error, Sashko argues that the trial court's judgment issued January 28, 2011, granting Midamco specific performance and ordering him to restore the bowling alley as an operable bowling alley for a period of four and a-half months was an abuse of discretion. Sashko contends that the trial court's judgment of specific performance was an abuse of discretion because, despite its determination that Midamco was responsible for correcting the damage from the ongoing water seepage, the court did not order Midamco to resolve the seepage or mold problems in the bowling alley

before any equipment was reinstalled. Sashko further contends that the trial court's order of specific performance was an abuse of discretion because it did not account for the ongoing damage to the bowling alley and the equipment he left in the bowling alley (that could have been reinstalled) resulting from Midamco's failure to attend to the water seepage problems during the pendency of the litigation.

{¶22} Specific performance is only available where there is no adequate remedy at law. *Gleason v. Gleason*, 64 Ohio App.3d 667, 672, 582 N.E.2d 657 (4th Dist.1991) Generally, specific performance will be denied unless there is evidence that money damages would be an inadequate remedy. *Id.*

{¶23} An exception to this rule involves interests in real estate, including commercial leases, which are unique. Accordingly, "specific performance is an appropriate equitable remedy for the breach of a commercial lease, even without further evidence that there is no adequate remedy at law." *Sholiton Ind., Inc. v. Wright State Univ.*, 2d Dist. No. 95-CA-101, 1996 WL 531587 (Sept. 20, 1996).

{¶24} Even in real estate matters, however:

The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfected in equity. These elements, conditions, and incidents, as collected from the cases are the following: the contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; *and its performance not oppressive upon the*

*defendant*; and finally, it must be capable of specific execution through a decree of the court.   (Emphasis added.)

*Roth v. Habansky*, 8th Dist. No. 82027, 2003-Ohio-5378, ¶ 16, citing *Manning v. Hamamey*, 8th Dist. No. 72072, 1998 WL 57093 (Feb. 12, 1998).

**{¶25}** Specific performance of contracts rests within the discretion of the court, controlled by principles of equity, on full consideration of the circumstances of each particular case.   *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (1913); *see also Roth* at ¶ 17, citing *Manning*.   The standard of review is whether the trial court, sitting as a court of equity, abused its discretion.   *Roth* at ¶ 17.   An abuse of discretion involves more than an error of judgment; it requires that the court have made an unreasonable, arbitrary, or unconscionable decision.   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶26}** It is well established that specific performance will not be granted where it will cause unreasonable hardship, loss, or injustice to the party in breach. *Roth* at ¶ 19, citing *Sternberg v. Bd. of Trustees of Kent State Univ.*, 37 Ohio St.2d 115, 118, 308 N.E.2d 457 (1974).   As noted by the Ohio Supreme Court, "it makes no difference whether the circumstances which render the claim for specific performance, when made, inequitable, arose prior or subsequent to the date of the contract sought to be enforced."   *Roth* at ¶19, citing *Huntington v. Rogers*, 9 Ohio St. 511, 512, 1859 WL 25 (1859).

**{¶27}** In this case, we find that the trial court's order of specific performance is not equitable under the circumstances because the order made no provision for Midamco to

repair the water and mold damage to the bowling alley before Sashko reinstalled any equipment, despite the court's finding that Midamco was responsible for repairing such damage.

{¶28} Midamco clearly understood that such repairs need to be made if the bowling alley is to be restored to its previous condition. When arguing for damages, counsel for Midamco specifically acknowledged that the wooden substructure to the bowling lanes was damaged as a result of decay from water seepage and needed to be replaced before any equipment could be reinstalled, but asserted that Sashko should make the repairs. (Tr. 728.) Further, counsel for Midamco agreed with the trial court's assessment that it was unclear how much of the substructure would need to be removed before the equipment could be reinstalled, and that "it may be that this thing is like a house of cards. When you take out the first support structure, you got to take out everything else." (Tr. 729.)

{¶29} Furthermore, although Midamco argues on appeal that the evidence offered at trial does not support a claim of a serious mold condition in the bowling alley, the testimony proved otherwise. Matt Johnson, program manager for the Cuyahoga County Board of Health, testified that he inspected Broadway Dunham Lanes on September 25, 2009, and noted in his report that he smelled an odor consistent with mold when he entered the bowling alley. George Ingalis, a forensic engineer at R.V. Buric Construction Management Consultants, Inc., testified that he inspected the bowling alley on September 28, 2009, and October 6, 2009, and saw no visible water damage on the top surface of the bowling lanes, but observed water damage and decay on the wood supports

under the lanes. He took moisture readings of 48.4% and 52.3% from the wood under the lanes and readings of 70% and 54.8% at the base of the foundation walls. Ingalis testified that moisture levels over 19% in wood are considered elevated and an indication of active water intrusion that can support the growth of mold. He stated that moisture levels in wood over 30% indicate water intrusion at levels that cause wood decay. Ingalis testified further that Auburn Environmental, a firm that specializes in mold detection and analysis, had inspected the premises at his request and issued a report confirming the existence of mold in the bowling alley.

{¶30} In the damages portion of the trial, counsel for Midamco specifically recognized the mold problem in the bowling alley and asked that the court order Sashko "to remediate the damage to the wood substructures, *as well as remediate any issues from mold* that develop as an obvious consequence of that. * * * *What my client is looking for is somebody to give it a certification* that the damaged structure has been repaired and replaced as appropriate, and *the mold has been remediated*. I think the county can probably come in and certify that the mold has been remediated." (Emphasis added.)

{¶31} However, although the court specifically found that Midamco was responsible under the terms of the lease for repairing any damage to the bowling alley from water seepage, and although the evidence established that there was both damage to the wood substructure and mold as a result of the water seepage, the court inexplicably did not order Midamco to resolve these issues before Sashko was to restore the bowling alley to an operable condition. We find that under such circumstances, the court's order of specific

performance would impose an unreasonable hardship on Sashko. The evidence is clear that the wooden substructure needs to be fixed and the mold in the bowling alley remediated prior to restoration of the bowling alley.[2] Because Midamco was not ordered to make the repairs and remediate the mold, Sashko would necessarily incur the costs for doing so, even though the court concluded that he was not responsible under the lease for any damages caused by water seepage. Imposing such costs on Sashko would be inequitable under these circumstances.

{¶32} Furthermore, Sashko should not be penalized for Midamco's failure to remediate the water seepage problem after he vacated the premises in 2009, which undoubtedly allowed more damage to the bowling alley and any equipment left there to occur. The court's order that Sashko must "restore the premises to their condition at the time [he] commenced dismantling the premises" does not account for this additional damage and imposes an unfair burden on Sashko to remediate damage to the bowling alley that Midamco could have avoided.

{¶33} And finally, although the court's order of specific performance was apparently an attempt to put the parties in the position they would have been if the lease had been fulfilled, it does not do so. Midamco argued, and the court agreed, that under the terms of the lease, Sashko was to continuously operate as a bowling alley for the full term

---

[2]Whether the damage occurred before or after the court issued the temporary restraining order and preliminary injunction is immaterial. The court ruled that Midamco is responsible under the lease for repairing *any damage* caused by water seepage.

of the lease, and that it was damaged by Sashko's cessation of business prior to expiration of the lease term because while it was closed, the bowling alley was not generating customer traffic for the other businesses at the shopping center. But the court's order of specific performance does not actually compensate Midamco for Sashko's breach of this lease provision. Significantly, although both parties assert that the trial court ordered that Sashko must actually operate Dunham Broadway Lanes for four and one-half months after it is restored, the trial court's judgment contains no such directive. The judgment states only that Midamco is entitled to restoration of all equipment to the property and that Sashko is to restore the removed or comparable equipment to the premises so that it is "operable" as a bowling alley. The judgment does not order Sashko to actually operate the bowling alley after it is restored; it merely orders him to pay rent of $4,000 per month for four and one-half months after restoration. Thus, Sashko is under no obligation to actually open and operate Broadway Dunham Lanes after it is restored.

{¶34} Under these circumstances, we find that the trial court's order of specific performance, i.e., that Sashko restore the premises to an operable bowling alley, was an abuse of discretion. Because we find specific performance to be inequitable under the circumstances of this case, we reverse the trial court's judgments filed January 31, 2011 and March 18, 2011, to the extent they order Sashko to restore Broadway Dunham Lanes as an operable bowling alley, and to pay rent for the period after January 28, 2011 until four and one-half months after the premises are restored.

{¶35} The trial court found that Midamco proved at trial that Sashko was not

entitled to remove his equipment until the lease had expired, that some money for damage to the premises as a result of the equipment removal was due, and that Midamco had sustained some lost rental income due to its inability to re-lease the premises after Sashko vacated. We remand for a hearing to determine the amount of money damages Midamco has incurred related to these findings. Appellant's first assignment of error is sustained.

### III. Sashko's Second, Third, and Fifth Assignments of Error

**{¶36}** In his second assignment of error, Sashko contends that the trial court's judgment of March 18, 2011, ordering him to restore the premises within 30 days of the date of its judgment was an abuse of discretion. This assignment of error is moot in light of our resolution of the first assignment of error, and therefore we need not consider it. App.R. 12(A)(1)(c).

**{¶37}** In his third assignment of error, Sashko contends that the trial court's order requiring him to operate Broadway Dunham Lanes for four and one-half months after he restores the bowling alley to its condition as of June 2009, and to pay rent of $4,000 per month for those four and one-half months, is an impermissible expansion of the terms of the lease, which ended on January 31, 2010.

**{¶38}** We have already concluded that the court's judgment that Sashko restore the premises to an operable condition was an abuse of discretion and, therefore, we need not address this assignment of error. We note, however, that if the trial court's order of specific performance were correct, despite Sashko's assertion otherwise, the court could

have properly awarded damages for lost rent for the months needed to repair and restore the property as a result of Sashko's breach. *See, e.g., Brown v. Spitzer Chevrolet Co.*, 181 Ohio App.3d 642, 2009-Ohio-1196, 910 N.E.2d 490, ¶ 53 (5th Dist.2009). We further note, however, that even if the order of specific performance were correct, the trial court's judgment that Sashko pay four and one-half months past due rent for vacating the premises early, and then pay rent for four and one-half months after the bowling alley is restored, was an abuse of discretion because it would allow Midamco to recover twice for the same injury.

{¶39} In his fifth assignment of error, Sashko contends that the trial court erred in denying his motion to vacate on the basis that he had not complied with Civ.R. 60(B). This assignment of error is also moot because of our resolution of the first assignment of error and, therefore, we need not consider it. App.R. 12(A)(1)(c).

{¶40} Appellant's second, third, and fifth assignments of error are overruled as moot.

### IV. Attorney Fees

{¶41} Midamco asked the court to award it $115,005.68 for attorney fees and expenses under Section 18.04 of the lease agreement, which provided that Sashko would pay Midamco's attorney fees and expenses should Midamco file suit and establish a breach of the agreement.

{¶42} After a hearing, the court awarded Midamco $30,465.90 in fees and expenses. In his fourth assignment of error, Sashko contends that the trial court abused its

discretion in making such an award.

**{¶43}** The party seeking attorney fees has the burden of introducing sufficient evidence of the services rendered and the reasonable value of those services. *Century Bus. Servs., Inc. v. Barton*, 8th Dist. No. 95542, 2011-Ohio-5917, ¶ 88, citing *In re Verbeck's Estate*, 173 Ohio St. 557, 184 N.E.2d 384 (1962). In determining whether an attorney's fee is reasonable, the court should consider the factors set forth in Rule 1.5(a) of the Ohio Rules of Professional Conduct.[3] A court's decision to award fees will not be reversed absent an abuse of discretion. *State ex rel. Sawyer v. Cendroski*, 118 Ohio St.3d 50, 2008-Ohio-1771, 885 N.E.2d 938, ¶ 11.

**{¶44}** Here, the court found that Midamco had not proved any breach with respect to equipment ownership and water damage and, thus, Sashko should not pay any legal fees with respect to these two issues. The court found that Midamco had proved that Sashko had breached the provisions of the lease that required monthly rent payments, the premises to be returned in the same condition they were upon delivery, and for Sashko to repair any damages to the premises caused by removal of the equipment. But the court concluded

---

[3] Those factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

that much of the requested legal fees were for the four days of trial and that Midamco had not established to what extent a trial was necessary to obtain relief for these breaches — relief that, according to the court, "might well have been recovered through pretrial negotiations." Accordingly, the court did not award Midamco attorney fees or expenses related to the trial. However, the court awarded Midamco all its pretrial attorney fees (at $250 per hour) and expenses, upon finding, without explanation, that "all legal services and related expenses up to the commencement of trial were necessary for plaintiff to incur."

**{¶45}** We agree with Sashko that this was an abuse of discretion. The court found that "the predominant issues" in the case were Midamco's claims that it owned the equipment in the bowling alley and that it was entitled to compensation for repair of water damage. But the court found that the ownership issue could have easily been resolved "by adequate research and reading of case law." The court noted that the bowling alley litigation cases that it "easily located," but the parties did not cite, were readily dispositive of the issue. It further noted that the water damage issue was easily resolved by interpretation of the lease and the addendum.

**{¶46}** Further, the court noted that "the decision to try the water damage and equipment ownership issues rather than compromise was under [Midamco's] control" and that "the entire dispute was one that, in all likelihood, could have been resolved if [Midamco] had not sought a judicial determination of the equipment ownership and water damage issues." The court noted that before trial, Sashko was willing to pay the back rent

and let Midamco keep the disputed property, but it was not willing to pay for the water damage or to pay the large amount of money demanded by Midamco.

{¶47} In light of these findings, we cannot conclude that all of Midamco's pretrial fees and expenses, which undoubtedly involved substantial preparation for trial on issues that Midamco did not prevail on and that the court found could easily have been settled prior to trial, were necessary for Midamco to incur. But based on the record before us, we cannot ascertain which of Midamco's pretrial fees and expenses were related to the breaches it proved at trial.

{¶48} Accordingly, we remand for a hearing on this issue and a determination of Midamco's pretrial attorney fees and expenses. Appellant's fourth assignment of error is sustained.

{¶49} Reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

JAMES J. SWEENEY, J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS WITH SEPARATE OPINION.

MARY J. BOYLE, P.J., DISSENTING:

{¶50} I respectfully dissent and would affirm the trial court's judgment in its entirety. As stated by the majority, we review the trial judge's decision to award specific performance as a remedy for Sashko's breach of the lease agreement under an abuse of discretion. *See Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984).

{¶51} To concur with the majority that the trial court abused its discretion, I would have to find that the trial court's decision was "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). I do not find that.

{¶52} After presiding over four days of a bench trial, the trial judge issued a detailed 15-page opinion, setting forth findings of fact and conclusions of law, as well as the court's judgment, awarding Midamco the relief it sought: specific performance and monetary damages for Sashko's breaches under the lease. With regard to the award of specific performance, I can hardly say that the trial court's judgment amounts to an abuse of discretion. Indeed, given that Sashko breached the lease by removing the bowling fixtures prior to the expiration of the lease and that the presence of the bowling fixtures

are critical in Midamco's ability to lease the premises to a new tenant, the award of specific performance was both a reasonable and proper remedy.

{¶53} Although the majority finds that the award of specific performance creates an unreasonable hardship, Sashko did not assert this defense during trial. And while Sashko later attempted to establish this defense through his motion to partially vacate judgment, he failed to satisfy the dictates of Civ.R. 60(B) or attach competent evidence to support his claim. Under these circumstances, I find that the trial court's decision must be affirmed. Indeed, it is not an appellate court's function to substitute its judgment for the trial court's decision merely because it disagrees with the remedy provided by the trial court.